*18 OPINION OF THE COURT
Frank V. Ponterio, J.
In this holdover proceeding, petitioner landlord Fairview Company seeks to regain possession of a Federally subsidized apartment from respondent tenant Janice Idowu predicated upon the expiration of the tenant’s term pursuant to a termination notice. The notice alleges certain acts constituting material noncompliance with the lease. Idowu now moves to dismiss the petition and in support of her motion alleges several defects in the notice. In particular, she claims that (1) the notice was not signed by the landlord or a person named in the lease as authorized to act on the landlord’s behalf or by an agent whose proof of agency accompanied the notice; (2) that the notice does not cite the specific lease provisions claimed to have been violated; and (3) that the notice does not set forth the landlord’s complaints with sufficient detail to enable Idowu to prepare a defense. Fairview argues that the notice bears the signature of a person known by Idowu to represent the landlord and who in fact signed the lease on behalf of the landlord. Fairview argues further that the adequacy of the notice is to be determined solely by reference to Department of Housing and Urban Development (HUD) regulations, and that the applicable regulations do not require á notice to cite specific lease provisions claimed to have been violated. Fairview also contends that the description of alleged wrongful conduct in the notice is sufficiently specific to enable Idowu to prepare her defense.
The essential facts are not in dispute. The termination notice is as follows:
"termination notice
"to: JANICE IDOWU
"240 Parkhill Ave. Apt. 6-0
"Staten Island,N.Y. 10304
"madam:
"please take notice that the landlord deems you to be in material non-compliance with the terms of your lease and you have failed to pay rent beyond the grace period available to you, you have failed to pay rent for approximately eight (8) months have done serious and repeasted [sic] damage to the unit, have created physical hazards and have seriously and repeatedly interfered with the rights of other tenants, have *19 engaged in repeated violations of the lease that disrupt the livability of the building, adversely affect the health and safery [sic] of other persons and the rights of other tenants to the quiet enjoyment of their leased premises and related facilities and have otherwise interfered with the management of the building, all of which have had an adverse financial effect on the building. Specific instances of such material noncompliance are as follows: (a) You have failed to pay rent and this has necessitated the commencement of non-payment proceedings against you in the past; (b) You have failed to pay rent since August 1989 and are at least eight (8) months in arrears in the payment of said rent; (c) Between February 2 and February 4 you have left your apartment vacant for the entire weekend but allowed the water to be left running in the bathroom with a sponge clogging up the drain so as to cause flooding in several apartments and more particularly the apartment of the tenant immediately below you, apartment 5-0 located at 240 Parkhill Avenue, Staten Island, N.Y. with resultant damage; (d) That you have engaged repeatedly over the last six (6) months in a conduct that has caused excessive noises in the apartment and pounding on the floor of the apartment and have caused the lighting fixture in the apartment immediately below you to fall; (e) by allowing the water to continue to run within a locked apartment over that weekend of February 2nd through 4th of 1990, it was necessary for the landlord to turn off the water to prevent further damage to its property and to the property of other tenants which caused enormous incovenience [sic] to other tenants.; (f) That from September 1989 until the present you have repeatedly complained of conditions in your apartment but have abusively refused access to maintenance personnel and on approximately six occasions the landlord’s agent and maintenance personnel have been denied access for the purpose of making such repairs, and inspecting premises; (g) That you have used violent and abusive language and threatening language against the tenant of apartment 5-0 who on numerous occasions requested that you reduce the noise level in your apartment and desist in other offensive conduct.
"All of the conduct complained of continues until the present without abatement and the landlord deems you to be an undesirable tenant. By reason of the foregoing the landlord elects to terminate your tenancy effective April 19,1990.
"please take notice that you have ten (10) days from the *20 the [sic] date this notice is hand delivered to you or to your unit or or [sic] ten (10) days after the date this notice is mailed within which to discuss the proposed termination of your tenancy with the landlord’s agent at the renting office, 180 Parkhill Avenue, Staten Island,N.Y., first floor. You may request a meeting with the landlord. The landlord agrees to discuss the proposed termination with you.
"That unless you vacate the premises on or before April 19, 1990, the landlord shall commence summary proceedings pursuant to statute for your eviction and removal. In any such special proceeding that may hereafter be brought pursuant to this notice, you have the right to appear and to defend this action in court and to be represented by counsel.
"Dated: Staten Island,N.Y.
"April 4,1990
"fairview company
"by: _/s/_
"SHONETTE WILSON
"Agent
"180 Parkhill Ave.
"S.I..N.Y. 10304
"(718) 448-6101”
The affidavit of service of the notice alleges service by leaving a true copy with "a person of suitable age and discretion” at the premises and by a regular and certified mailing to the premises, all on April 5, 1990.
Idowu’s claim that the termination notice is not signed by the landlord is without merit. Both parties agree that the landlord is Fairview Company. The subscription consisting in part of the typewritten name "fairview company” is a signature of the landlord. "The term signature includes any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed on any instrument or writing with intent to execute or authenticate such instrument or writing.” (General Construction Law §46; see also, Iselin & Co. v Fireman’s Fund Ins. Co., 117 AD2d 86 [1st Dept 1986]; Lorenzo v Rivera, 132 Misc 2d 591 [Civ Ct, Kings County]; People v Berman, 197 NYS2d 346). It appears clear enough that the typewritten name was intended as a signature. The additional, handwritten signature by Shonette Wilson and the designation "Agent” serve only to reinforce this conclusion. These additional notations merely identify the *21 person who prepared the notice and who may be contacted by the tenant to discuss the landlord’s complaints as is required by the applicable Federal rules.
In support of her argument regarding the failure of the termination notice to cite specific lease provisions, Idowu relies on Chinatown Apts. v Chun Cho Lam (51 NY2d 786 [1980]). In Chinatown, the landlord alleged that the tenant breached the lease by erecting a cube-like structure on the premises. The landlord served a notice of intention to terminate occupancy demanding that the tenant remove the offending "partition”. Putting aside the issue of whether the word "partition” sufficiently apprised the tenant of the condition to be cured, the Court of Appeals held that in any event "The deficiency in the notice arises from its failure to cite any specific prohibition in the lease which had been violated” (supra, at 788). Although the notice in Chinatown is essentially a notice to cure not a notice of termination, it has been interpreted to apply to termination notices. (City of Buffalo Urban Renewal Agency v Lane Bryant Queens, 90 AD2d 976 [4th Dept 1982]; Bessler v Kandil, NYLJ, Feb. 6, 1990, at 28, col 1 [Civ Ct, Kings County]; Harte v Harte, NYLJ, Mar. 14, 1990, at 27, col 3 [Civ Ct, Kings County].) Idowu also points out that the notice fails to state specific dates and times concerning the alleged wrongful conduct. Relying on Caiado v Bischoff (140 Misc 2d 1014), she contends that such failure prevents her from preparing a defense and is consequently a fatal defect.
The threshold question with regard to the adequacy of the notice is whether it is to be measured by reference to only HUD regulations, as Fairview contends, or by reference to both HUD regulations and State authority. In the leading case of City of Boston v Harris (619 F2d 87 [1st Cir 1980]) the Court of Appeals held that the then newly promulgated HUD regulations 24 CFR 403.1 et seq. (since renum 24 CFR 246.1 et seq.) preempt all State and local rent regulations and that for subsidized buildings the preemption is absolute. The preemption of 24 CFR 246.1 nevertheless is limited to the regulation of rents. In two 1984 New York County Civil Court decisions this preemption was held also to exempt owners of subsidized buildings from any requirement to plead and prove in an eviction proceeding that a subsidized building was registered with the Rent Stabilization Association. (Pleasant E. Assocs. v Cabrera, 125 Misc 2d 877; Axelrod v Various Tenants of Delano Vil., 123 Misc 2d 922.) The court in Axelrod seemingly *22 found a broad preemption implied in City of Boston (supra). However, both cases merely obviated compliance with a procedural requirement, directly related to the regulation of rents, that was rendered meaningless in light of the Federal preemption. This court finds nothing in City of Boston (supra) supporting any further extension of the reach of the preemption of the Federal rules. That such preemption does not extend to an examination of the adequacy of the contents of a termination notice is made clear by 24 CFR 247.6 (c) which states "A tenant may rely on State or local law governing eviction procedures where such law provides the tenant procedural rights which are in addition to those provided by this subpart, except where such State or local law has been preempted under Part 246 of this chapter or by other action of the United States.”
With regard to the level of detail supporting the landlord’s allegations of wrongful conduct, there is no conflict between State authority and HUD regulations. 24 CFR 247.4 (a) (2) requires a notice to “state the reasons for the landlord’s action with enough specificity so as to enable the tenant to prepare a defense”. The corresponding requirement in HUD Handbook 4350.3 “Occupancy Requirements of Subsidized Multifamily Housing Programs” is at section 4-20 a.2, viz., “state the grounds for termination with enough detail for the tenant to prepare a defense”. Both statements of requirements are consistent with the decision in Caiado (supra). There, the court held that a tenant is entitled to " 'a concise statement of the ultimate facts upon which the proceeding is predicated’ ” to enable the tenant to interpose and establish his defenses. (Caiado v Bischoff, supra, at 1016.)
As for the necessity to cite specific lease provisions claimed to have been violated, neither the CFR nor HUD Handbook 4350.3 makes any such demand. The necessity to do so arises from Chinatown (supra), and its progeny. It is a procedural right in addition to those provided for in the Federal rules and is in accord with 24 CFR 247.6 (c).
The termination notice alleges several grounds for termination including failure to pay rent, commission of wrongful acts against the landlord and other tenants and refusal to allow landlord access to the apartment to make repairs. Specific dates are stated with regard to only one wrongful act, viz., over the weekend of February 2 through February 4, 1990 allowing water to overflow and damage the apartment below. With regard to the other alleged wrongful acts, they are *23 claimed to have occurred "repeatedly” over the last six months. The allegation of rent arrears does not specify a dollar amount. 24 CFR 247.4 (e) states: "In any case in which a tenancy is terminated because of the tenant’s failure to pay rent, a notice stating the dollar amount of the balance due on the rent account and the date of such computation shall satisfy the requirement of specificity set forth in paragraph (a) (2) of this section.” Although this rule does not mandate that a dollar amount be stated, it may reasonably be inferred that if some other statement of arrears is made it must at a minimum specify for which months the rent is claimed to be unpaid.
I find that the contested termination notice was signed by the landlord but its failure to cite specific provisions of the lease claimed to have been violated by Idowu is a fatal defect. Evaluated against the applicable HUD rules, I find that the specification of the grounds for termination, except for the February 2-4, 1990 weekend water overflow incident, are not sufficiently specific to enable Idowu to prepare a defense. I find further that the single water overflow incident is insufficient in itself to sustain a termination based on material noncompliance with the lease. Material noncompliance is defined in 24 CFR 247.3 (c) as
"(1) One or more substantial violations of the rental agreement;
"[or] (2) Repeated minor violations of the rental agreement that * * * disrupt the livability of the project * * * adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises”.
The water overflow incident appears to fit category (2) as to the nature of the offending conduct, but it was a single, not a repeated violation.
Although not raised as an issue by the respondent tenant, the termination notice suffers from another possible infirmity. The notice, served on April 5, 1990, purports to terminate the tenancy on April 19, 1990. It is unclear whether the notice provides the required minimum notice period. 24 CFR 247.4 (c) provides that the notice period in case of a termination based upon material noncompliance with the lease "shall be in accord with the rental agreement and state law”. The rental agreement is silent as to the notice period. Consequently, reference must be made to State law. However, neither the pleadings nor the moving papers provide the court with *24 sufficient information to determine which State law applies, i.e., New York City Rent Control, New York City Rent Stabilization, or the Emergency Tenant Protection Act of 1974 (ETPA) codified respectively in Administrative Code of the City of New York § 26-401 et seq., and § 26-501 et seq., and McKinney’s Unconsolidated Laws § 8621 et seq. Although a 10-day notice period would satisfy the minimum required by both local and Federal requirements for an apartment subject to either rent control or the Rent Stabilization Law of 1969, it would not satisfy the requirement for an apartment subject to the ETPA. The tenant protection regulations implementing the ETPA require both a notice to cure and a notice of termination whose notice periods may run concurrently. For the grounds specified in the instant notice, except for the nonpayment of rent, the minimum notice period is one month. (Emergency Tenant Protection Regulations [9 NYCRR] § 2504.3 [d] [2].)
For purely instructional purposes, I also note in passing the danger inherent in the casual use of preprinted service affidavits. The affidavit of service of the termination notice indicates service upon "a person of suitable age and discretion”. While such service nominally satisfies the standards of RPAPL 735 and CPLR 308 (2) for substituted service, it does not necessarily satisfy Federal rule 24 CFR 247.5 (b) (2) which requires service upon an adult person. This court is aware of only two published decisions dealing directly with the issue of what minimum age constitutes a "suitable age”. In both cases the court upheld service upon a person who was not an adult. (Durham Prods. v Sterling Film Portfolio, Ltd., Series A, 537 F Supp 1241 [SD NY 1982] [a 12-year-old boy]; Bradian v Chavez, NYLJ, Apr. 23, 1968, at 16, col 6 [Sup Ct, Bronx County] [a 13-year-old boy].) In this proceeding the issue did not arise because the person served is described in the affidavit as being 25 years of age.
Accordingly, respondent’s motion to dismiss the petition is granted.