**Vada MOON, Appellant,**

v.

**SPRING CREEK APARTMENTS, Appellee.**

No. 06–99–00019–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 9, 1999.

Decided Jan. 25, 2000.

---

Edward Long, Jr., East Texas Legal Services, Texarkana, for appellant.

Donald W. Dowd, Lovelace & Dowd, Linden, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

This appeal arose from a forcible detainer action brought in the justice court by Spring Creek Apartments (SCA) against Vada Moon, a tenant, for alleged violations of lease rules and regulations. Both the justice court and the district court ordered Moon's eviction from the premises in question. On appeal, Moon complains of the following errors: (1) SCA was allowed to introduce evidence of. alleged lease violations that occurred over the course of the past ten years; and (2) the eviction notice failed to meet the specificity requirement mandated by federal regulations and violated due process.

At the time this action was initiated, Moon resided in an apartment unit in SCA, a federally subsidized apartment complex regulated by 42 U.S.C. § 1437(a)(2) et seq. and Title 24 of the Code of Federal Regulations. Moon had resided in the apartment for the past sixteen years, renewing her lease each year. She was presently leasing the apartment under a one-year contract extending from June 1, 1998 to May 31, 1999. The lease contract provided that SCA may terminate a tenancy for material noncompliance with the contract, including repeated minor violations that: (a) disrupt the livability of the project, (b) adversely affect any person's health or safety or the right of quiet enjoyment of the project, or (c) interfere with the management of the project.[1] In addition, the lease agreement contained an attachment setting forth the rules and regulations for tenants.[2]

There was evidence that during the term of the 1998–1999 lease, Moon committed several violations of the project's rules and regulations. On June 11, 1998, Moon allowed her three-year-old grandson, a cotenant in her apartment, to ride his bicycle in the common areas of the apartment complex. According to the records kept by SCA, when Amanda Miller, a man-

---

1. This lease provision is in compliance with the federal regulations which provide the allowable grounds for the termination of a tenancy. *See* 24 C.F.R. § 247.3(a)(1), (c)(2) (1999).

2. The 1998–1999 lease incorporates "the Rules of Occupancy which are attached," but it is not clear from the record to what rules the lease refers. The fact that there were rules and regulations in effect for the 1998–1999 lease was not disputed, but the only copy of the rules in evidence was signed by Moon in 1994. At trial, Moon disagreed with SCA about what rules were in effect during the 1998–1999 lease.

ager of SCA, instructed Moon that such conduct was against the rules, Moon became verbally abusive. SCA did not give Moon written notice of this violation. On June 22, 1998, Moon parked in the grass under a shade tree and received a written warning that her car was improperly parked and subject to being towed. On September 2, 1998, Moon's guest improperly parked in the grass, but no action was taken by SCA.

On September 7, 1998, Moon complained to SCA management that an employee of SCA was operating a weed-eater so as to endanger the well-being of her grandson, who was playing on her porch. When told that her grandson should not have been on the porch unsupervised,[3] Moon became verbally abusive. On September 17, 1998, SCA issued Moon a written notice related to this incident,[4] stating that Moon had violated the lease by disrupting the livability of the project, adversely affecting a person's health or safety or right to quiet enjoyment of the project, and interfering with the management of the project. The record reflects that the police were called when Moon became verbally abusive and refused to accept the violation.

On October 1, 1998, Moon's son, who was not a tenant of SCA, performed repairs on his vehicle in the parking lot of SCA. There was evidence that SCA advised Moon's son that such conduct was not allowed, but that Moon herself was in the hospital in Shreveport at the time. On the morning of October 2, 1998, Moon's three-year-old grandson was again riding his bicycle in a common area and had a collision with a two-year-old tenant, who was on foot.[5] An argument ensued between Moon and the grandmother of the other child, Sharon Harrison, with both parties yelling at one another. Harrison claimed that Moon's grandson ran over the other child, while Moon claimed that the other child tripped over the training wheels of the bicycle. Later that same day, Moon's adult son again had the hood up on his car and appeared to be doing repairs.[6]

Following these incidents on October 2, 1998, SCA had the police deliver to Moon two notices of lease violations, along with a notice to vacate. Moon received the aforementioned notices by certified mail on October 15, 1998. When Moon failed to vacate the premises by the required time, SCA filed a forcible detainer action against Moon in the justice court.

On October 21, 1998, at Moon's request, Moon and several SCA employees attended an informal meeting to discuss Moon's pending eviction, but no issues were resolved.[7] On October 23, 1998, the justice court ordered Moon's eviction from the premises. Moon appealed to the district court, and on December 8, 1998, the district court granted SCA's petition for forcible detainer. Moon now appeals the district court's judgment.

In point one, Moon contends that the district court committed reversible error

3. Based on an examination of the record, it does not appear to be a violation of the lease to allow minor children to play on the porch unsupervised. Shortly after this incident, SCA sent out a notice mandating that children be kept inside when lawn maintenance was being performed.

4. There is evidence that SCA issued a violation notice only after Moon informed a television news station of the incident.

5. In the findings of fact, the district court states that this incident occurred on September 8, 1998, but we find no evidence in the record to support such a date.

6. Moon testified that her son was just recharging the battery on October 2, 1998. SCA's records indicate that the manager of SCA informed Moon's son that the Rules permit re-charging batteries and changing flat tires.

7. There is hearsay evidence in the record that, at the meeting, SCA offered Moon an opportunity to avoid eviction if she would agree in writing to abide by a list of basic rules, and Moon refused.

**432**

by allowing SCA to introduce evidence of alleged lease violations that occurred over the course of the past ten years.

■ To preserve error as to the admission of evidence, a party must make a timely objection and state the specific grounds for the desired ruling, if the grounds are not apparent from the context. Tex.R. Evid. 103(a); Tex.R. App. P. 33.1. If a party fails to make a timely and specific objection, error is not preserved and the complaint is waived. *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (opinion on reh'g). A party cannot raise a ground of error on appeal without first raising the complaint in the trial court. *PGP Gas Prods., Inc. v. Fariss,* 620 S.W.2d 559, 560 (Tex.1981).

■ In the present case, Moon's tenant history records were admitted into evidence by SCA without objection. These documents included evidence of lease violations by Moon going back to the time of her 1989 lease. After the admission of these records into evidence, Moon objected to SCA's use of the records on cross-examination. The district court allowed SCA to question Moon concerning violations from 1989, over Moon's objection that such violations were res judicata and were too remote.

Moon now contends that evidence of violations under prior leases was not admissible because (1) there is a two-year statute of limitations on forcible entry and detainer cases, and (2) SCA waived any complaint about prior violations by signing a new lease with Moon on June 1, 1998.

However, Moon did not preserve these points for review. Moon failed to make a timely objection when evidence of past violations was introduced as part of the tenant history records. By failing to make a timely objection when the tenant history records were admitted into evidence, Moon waived her right to thereafter object to the use of the information in the records on cross-examination. Moreover, when Moon did object, she did not specify the grounds

of statute of limitations and waiver of which she now complains. Moon never raised these grounds of error to the district court, and as such they are waived. Therefore, we conclude that the district court did not commit error in allowing the admission of evidence of past lease violations, because Moon failed to make a proper objection to the complained-of evidence. Point one is overruled.

In point two, Moon contends that the eviction notice failed to meet the specificity requirement mandated by federal regulations and violated due process.

A notice to vacate was hand-delivered to Moon on October 2, 1998. This notice stated the reason for eviction was that Gregory Dearion, Moon's three-year-old grandson, had violated paragraph 23B of the lease by "endangering [the] welfare of other tenants." The notice to vacate was delivered along with two notices of lease violations which stated that Moon had committed the following violations: disrupted the livability of the project, adversely affected a person's health or safety or right to quiet enjoyment of the project, interfered with the management of the project, washed or repaired a vehicle on the grounds of the project, and parked a vehicle on the premises that was not operable or properly licensed.

■ The district court found that adequate notice of eviction was provided to Moon. When the trial court files findings of fact and conclusions of law, the appellate court will review the legal conclusions to determine their correctness. *Old Republic Ins. Co. v. Fuller,* 919 S.W.2d 726 (Tex. App.-Texarkana 1996, writ denied). Conclusions of law are not binding upon appellate courts; instead, the appellate courts are free to draw their own legal conclusions. *Austin Hardwoods, Inc. v. Vanden Berghe,* 917 S.W.2d 320, 322 (Tex.App.-El Paso 1995, writ denied); *Connelly v. Paul,* 731 S.W.2d 657, 661 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). A trial court has no discretion in determining

what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Therefore, we will independently evaluate the issue of notice based on the facts found by the district court. *See Dallas County v. Sweitzer*, 881 S.W.2d 757, 763 (Tex.App.-Dallas 1994, writ denied).

■■■ To terminate a tenancy in federally subsidized housing, federal regulations and due process both require adequate notice detailing the grounds for termination.[8] The federal regulations provide that "the landlord's determination to terminate the tenancy shall be in writing and shall ... state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense," and that "[i]n any judicial action instituted to evict the tenant, the landlord must rely on grounds which were set forth in the termination notice...." 24 C.F.R. §§ 247.4(a)(2), 247.6(b) (1999). Moreover, due process requires a timely and adequate notice detailing the reasons for the proposed termination, *Caulder v. Durham Hous. Auth.*, 433 F.2d 998 (4th Cir.1970); *Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (2nd Cir.1970); *Edgecomb v. Housing Auth. of Vernon*, 824 F.Supp. 312 (D.Conn.1993); *Housing Auth. of King County v. Saylors*, 19 Wash.App. 871, 578 P.2d 76 (1978), because a denial of federal housing benefits, like denial of other forms of public assistance, is a denial of an interest protected by the Fourteenth Amendment. *Caulder*, 433 F.2d 998; *Edgecomb*, 824 F.Supp. 312; *Ferguson v. Metropolitan Dev. & Hous. Agency*, 485 F.Supp. 517 (M.D.Tenn.1980). "[E]very public tenant, however disorderly, evil, or malevolent, is entitled to due process before he is evicted." *Saylors*, 578 P.2d at 79, *citing Ruffin v. Housing Auth. of New Orleans*, 301 F.Supp. 251, 254 (E.D.La.1969).

Termination notices for federally subsidized housing have been found to be insufficient where they contain only one sentence, are framed in vague and conclusory language, or fail to set forth a factual statement to justify termination. For example, in *Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 492 N.E.2d 841 (1985), the court found that a notice failed to provide due process where it merely stated the grounds for termination as "serious, repeated damage to unit, repeated disturbance." And in *Escalera*, 425 F.2d at 858, the court found a termination notice to be inadequate where it stated the grounds for termination as "[i]llegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants." Also, courts have held rather extensive notices to be inadequate when they failed to notify the tenant of the dates of the alleged violations or the individuals involved. *Cuyahoga Metro. Hous. Auth. v. Younger*, 93 Ohio App.3d 819, 639 N.E.2d 1253, 1257 (1994); *Fairview Co. v. Idowu*, 148 Misc.2d 17, 559 N.Y.S.2d 925, 929 (Civ.Ct.1990). Furthermore, a notice which "merely parrots the broad language of the regulations" is insufficient. *Edgecomb*, 824 F.Supp. at 314; *see Saylors*, 578 P.2d at 79 (notice insufficient where termination predicated upon "violation of your lease in section 6j: The Tenant shall not commit or maintain a nuisance on or about the premises").

■■■ In the present case, the notice to vacate stated only that Gregory Dearion was in violation of lease provision 23B by "endangering [the] welfare of other tenants." The notice was framed in vague and conclusory language and fails to set forth a factual statement to justify termination. Although the notice named the individual involved, it failed to specify the dates of the alleged repeated violations that justify termination. Moreover, the

---

8. In addition, the lease between Moon and SCA provides that "all termination notices must: ... state the grounds for termination with enough detail for the Tenant to prepare a defense," and "[i]f an eviction is initiated, the Landlord agrees to rely only upon those grounds cited...." However, Moon is not asserting a breach of contract claim.

notice "merely parrots the broad language of the regulations."

However, SCA contends that the notice in the present case was sufficient based on *Hinojosa v. Housing Auth. of Corpus Christi*, 896 S.W.2d 833 (Tex.App.-Corpus Christi 1995, writ dism'd w.o.j.). In *Hinojosa*, the tenant complained that the notice was vague and conclusory and listed no specific acts of misconduct, and the Corpus Christi Court of Appeals found the notice to be sufficient. Yet, the notice in *Hinojosa* was quite different from the notice in the present case in that it included a much more extensive factual statement with dates and the names of individuals involved. Among other things, the notice informed the tenant of "clicking,"[9] verbal assaults, a November 19, 1992 physical assault, gang-related activity, and the presence of a named individual on the premises in violation of the December agreement. *Hinojosa*, 896 S.W.2d at 837. The notice in *Hinojosa* detailed the specific reasons for the eviction, and as such it is not comparable to the notice in the present case.

SCA next contends that the notice to vacate should be considered in conjunction with the two notices of violations that were delivered to Moon simultaneously but separately. However, even if considered together, the notices were still inadequate. The October 1st notice of violation, like the notice to vacate, was purportedly intended to apply to the grandson's bicycle collision, and therefore these two notices arguably could be read together. Yet, the October 1st notice merely stated that Moon had repeatedly committed the following minor violations: disrupted the livability of the project, adversely affected a person's health or safety or right to quiet enjoyment of the project, and interfered with the management of the project. This notice merely parrots the language of the regulations and in no way adds to the specificity of the notice to vacate. Only the October 2nd notice of violation is fairly specific in stating that Moon violated Rules and Regulations # 6 when a resident or guest washed or repaired his car, motorcycle, truck, or other vehicle on the premises. Yet, the notice to vacate specifically stated that the eviction was based on the grandson's conduct, so the notice to vacate cannot even arguably refer to the October 2nd car repair violation. It appears, as SCA alleges, that the notice to vacate was intended to refer to the grandson's bicycle violations, and Moon was not timely provided with written notice of any kind that specifically mentioned the grandson's bicycle violations.[10]

Considering the requirements of specificity outlined in the federal regulations and existing case law, and considering the requirements of due process, we conclude that the notice to vacate provided to Moon was inadequate.

Yet, SCA contends that even assuming that the notice was inadequate, such error does not require reversal because (1) the error was harmless, and (2) Moon waived her complaint by not raising the issue before trial either in her pleadings or in a motion to dismiss or plea in abatement.

Some courts in other jurisdictions have held that a tenant must show that she was

---

9. Clicking is a gang ritual whereby the gang members form a circle around a new initiate, and they all take turns beating him.

10. Almost one month after the issuance of the notice to vacate and several weeks after the justice court hearing, SCA issued Moon another notice of lease violation stating specifically that Moon violated the rules by allowing her grandson to ride his bicycle on the sidewalks at 2:55 p.m. on November 9, 1998. When read with the notice to vacate, an argument can be made that this notice meets the specificity requirements. However, the lease in question provides that if an eviction is initiated, the landlord can only rely on those grounds cited in the termination notice. A violation, such as the November 9 violation, that occurred *after* the issuance of the notice to vacate cannot be a proper ground for eviction. *See Associated Estates Corp. v. Bartell*, 24 Ohio App.3d 6, 492 N.E.2d 841, 846 (1985).

harmed by the inadequate notice before a case will be dismissed or reversed on such grounds. *Jefferson Garden Assocs. v. Greene,* 202 Conn. 128, 520 A.2d 173 (1987); *Hill v. Paradise Apartments, Inc.,* 182 Ga.App. 834, 357 S.E.2d 288 (1987); *Smith v. Hendrix,* 162 Ga.App. 299, 290 S.E.2d 504 (1982). And, other courts have held that inadequate notice may deprive a court of subject matter jurisdiction, thus requiring automatic reversal or dismissal, regardless of harm. *See, e.g., Glastonbury Hous. Auth. v. Martinez,* No. 82600, 1995 WL 621849 (Conn.Super.Ct. Oct.16, 1995) (not designated for publication); *Central Brooklyn Urban Dev. Corp. v. Copeland,* 122 Misc.2d 726, 471 N.Y.S.2d 989 (Civ.Ct. 1984). Either way, reversal is required in this case, because the record supports a showing of harm in that Moon was unable to prepare her defense.

■ In considering whether a tenant is harmed by deficient notice, we must decide if the due process goals for the required notice have been sufficiently satisfied: (1) adequate notice is provided so as to enable the tenant to prepare a defense, (2) the tenant is allowed to be represented by counsel, (3) the tenant is given an opportunity to present evidence, cross-examine witnesses, and present a defense, and (4) the decision is rendered on the merits. *See Escalera,* 425 F.2d 853; *Hinojosa,* 896 S.W.2d at 837. An error is harmful if it probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the court of appeals. Tex.R.App. P. 44.1.

■ In the present case, the notice deficiency was not merely hypertechnical, but was substantial and significant in that key information was omitted, thereby defeating one of the purposes of the notice. *Compare Glastonbury,* 1995 WL 621849 (complete omission of federally mandated language held to be substantial deficiency requiring reversal) *with Jefferson Garden Assocs.,* 202 Conn. 128, 520 A.2d 173 (hypertechnical deficiency in notice held not to require reversal). Unlike *Hill* and

*Smith,* where no harm was found to result from the inadequate notice, in this case the record reflects that Moon was unprepared to defend the action due to the inadequate notice. *See Hill,* 182 Ga.App. 834, 357 S.E.2d 288 (the court found no harm from inadequate notice where tenant was provided with separate letter stating reasons for termination, and tenant filed answer and actively pursued pretrial discovery); *Smith,* 162 Ga.App. 299, 290 S.E.2d 504 (the court found no harm from inadequate notice where tenant was provided with separate letter stating reasons for termination, and tenant filed timely answer and actively pursued pretrial discovery). Moon filed no answer, made no motion, and had no pretrial discovery. Moon testified that she did not "know specifically what this [notice to vacate] is talking about," and said that she did not know why she was told to leave the premises. And, in argument, Moon's counsel told the court that because of the vague and general notice, he did not understand the basis for the eviction, he was unable to effectively prepare a defense, and he did not know who to bring as witnesses. Also, counsel failed to object to the evidence of irrelevant past violations, arguably because he did not know which violations formed the basis for the eviction.

Therefore, if harm is required for reversal, there is sufficient evidence in the record to show that Moon was harmed by the inadequate notice.

■ Furthermore, Moon did not waive her complaint as to the inadequate notice. SCA has the burden of providing an adequate eviction notice to Moon as a prerequisite to maintaining a forcible detainer action. A forcible detainer action is only available to a landlord when the landlord lawfully terminates his tenant's lease, Tex. Prop.Code Ann. § 24.002 (Vernon Supp.2000), because it is the lawful termination of the lease that gives rise to the landlord's legal right to possession. *Caro v. Hous. Auth. of Austin,* 794 S.W.2d 901,

**436**

903 (Tex.App.-Austin 1990, writ denied). And, the federal regulations state that no termination of a tenancy in a federally subsidized project shall be valid unless notice is provided to the tenant detailing the reasons for the eviction with enough specificity so as to enable the tenant to provide a defense. 24 C.F.R. §§ 247.3(a), 247.4(a)(2) (1999). As such, if the landlord fails to provide proper notice to a tenant in federally subsidized housing, the tenant's lease will not be terminated and the landlord will have no right to possession.

Thus, as a prerequisite to maintaining a forcible detainer action, SCA had the statutory duty to lawfully terminate Moon's lease with the issuance of proper notice. SCA failed to perform this statutory duty. At trial, Moon raised the issue of inadequate notice during cross-examination of the first witness, and the judge made it clear that he understood Moon's complaint. Moon later introduced evidence that the notice was inadequate, and then at the end of trial, Moon moved to dismiss the case on this basis.

 SCA argues that the *Hinojosa* case requires Moon to file a plea in abatement or motion to dismiss before trial. However, in *Hinojosa* the court merely concluded that abatement was a proper remedy for inadequate notice because abatement "did not infringe upon or frustrate Hinojosa's [the tenant's] due process rights." *Hinojosa*, 896 S.W.2d at 837. Although it would have been proper for Moon to file a motion to dismiss or plea in abatement before trial, we conclude that such action is not required.

Furthermore, even assuming that Moon should have pleaded inadequate notice, SCA cannot now be heard to object to this pleading defect, because the issue of notice was tried by consent. When an issue not raised by pleadings is tried by the express or implied consent of the parties, such issue shall be treated in all respects as if it had been raised in the pleadings. Tex.R. Civ. P. 67; *Sage Street*

*Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex.1993). The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. Tex.R. Civ. P. 90; *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492 (Tex.1991).

Therefore, we conclude that the eviction notice failed to meet the specificity requirement mandated by the federal regulations and constitutional due process, and as such, Moon's lease was not lawfully terminated and SCA has no right to possession. Before pursuing a forcible detainer action, the federal constitution and federal regulations require SCA to provide adequate notice to Moon in order to lawfully terminate her lease.

We reverse the judgment of the district court and remand for a new trial, which shall proceed only if proper notice is provided by SCA.