NO.
12-06-00113-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

FELISA JESSIE,      §          APPEAL
FROM THE 

APPELLANT

 

V.        §          COUNTY
COURT AT LAW NO. 2 OF

 

JERUSALEM APARTMENTS,

APPELLEE   §          GREGG
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION








            Felisa
Jessie appeals from an order evicting her from an apartment and ordering the
payment of back rent.  In two issues, she
contends that she was denied due process because her landlord, Jerusalem
Apartments, did not comply with the terms of their lease.  We reverse and render.

 

Background

            Felisa
Jessie is the beneficiary of a federal program that pays her rent.  She signed a lease with the Jerusalem
Apartments (“Jerusalem”) on September 8, 2004 to lease an apartment from that
date until August 31, 2005.  The lease
stipulated that Jessie would pay no rent, so long as she received the rent
subsidy, and that she would abide by certain rules of the establishment.[1]









  On
June 13, 2005, Jerusalem delivered notice of intent to terminate the lease
effective August 31, 2005.  In the
notice, Jerusalem alleged that Jessie or her guests had violated the rules of
the establishment on several occasions. 
Jessie did not vacate the premises, but her rent subsidy was ended
because Jerusalem considered the lease to have been terminated.  On September 2, 2005, a
representative of Jerusalem wrote to Jessie informing her that she owed $469.00
pursuant to the lease agreement. 
Although it is not clear from the letter or the testimony at trial, this
appears to be the fair market value of the apartment rental for the month of
September.  

  In
October 2005, Jerusalem filed a forcible entry and detainer action in the
appropriate justice court alleging the nonpayment of rent.  Jerusalem secured a judgment in that court,
and the matter was appealed to the county court at law.  A trial de novo was held and Jerusalem prevailed.  This appeal followed.

 

Lease Terms

  The
relevant facts are not in dispute. 
Jessie agrees that she has paid no rent. 
The question is whether Jerusalem violated the terms of the lease when
it sought to evict Jessie for the nonpayment of rent.  Jerusalem’s theory is that it properly
terminated Jessie’s lease, her subsidy ended when the lease did, and she was
responsible for the fair market value of the rental.  Jessie responds with a two part
argument.  First, she argues that
Jerusalem was contractually bound not to end her rent subsidy except in certain
instances.  Second, she argues that
Jerusalem was obligated to give her notice, alleging specific violations of the
lease agreement, before it sought to terminate the lease and to give her the
opportunity to defend against the termination of the lease on those grounds in
court. 

Standard of Review

  The
only issue in a forcible detainer action is the right to actual possession of
the premises. Tex. R. Civ. P.
746; see also Tex. Prop. Code
Ann. § 24.001 (Vernon Supp. 2006). 
In reviewing a trial court’s findings of fact for legal and factual
sufficiency of the evidence, we apply the same standards we apply in reviewing
the evidence supporting a jury verdict.  See
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When the appellate record contains a reporter’s
record, as it does in this case, findings of fact are not conclusive on appeal
if a contrary fact is established as a matter of law or if there is no evidence
to support the finding.  See Material
P'ships, Inc. v. Ventura, 102 S.W.3d 252, 257 (Tex. App.–Houston [14th
Dist.] 2003, pet. denied).








  We
review the trial court’s conclusions of law de novo.  See Am. Airlines Employees Fed. Credit
Union v. Martin, 29 S.W.3d 86, 91 (Tex. 2000).  When performing a de novo review, the
reviewing court exercises its own judgment and redetermines each legal issue.  Quick v. City of Austin, 7 S.W.3d
109, 116 (Tex. 1998).  We will uphold
conclusions of law on appeal if the judgment can be sustained on any legal
theory supported by the evidence.  Waggoner
v. Morrow, 932 S.W.2d 627, 631 (Tex. App.–Houston [14th Dist.] 1996, no
writ).  Incorrect conclusions of law do
not require reversal if the controlling findings of fact support the judgment
under any legal theory.  Id.

  When
construing a lease, we seek to give effect to the intent of the parties as
expressed in the lease document.  Sun
Oil Co. v. Madeley, 626 S.W.2d 726, 727–28 (Tex. 1981).  Generally, examination of the written lease
will be sufficient to determine the intent of the parties.  Id. at 728.  Neither party contends that the lease
agreement is ambiguous.  Therefore, the
interpretation of the lease is a question of law.  Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983).

Analysis

  The
lease between these parties is a lengthy document designed to comply with
standards set by the federal government for housing that is subsidized at
taxpayer expense.  See generally
Nealy v. Southlawn Palms Apts., 196 S.W.3d 386, 389–90 (Tex. App.–Houston
[1st Dist] 2006, no pet.). The lease required Jerusalem to follow certain steps
if it wished to end Jessie’s rental subsidy or to terminate the lease.  

  Jerusalem
violated the terms of the lease in two ways. 
First, Jerusalem had agreed it would provide notice to Jessie if it
wished to terminate the lease and further agreed that it would seek to evict
her only on the grounds contained in a termination notice.  Instead of following the agreement, Jerusalem
treated the lease as if it had been terminated on August 31 and then took steps
to end Jessie’s subsidy.[2] 
Subsequently, it sought to evict her on grounds not contained in the
termination notice.  Jerusalem did not
offer any evidence the Jessie had violated the terms of the lease as described
in the termination notice.  

  Ending
Jessie’s subsidy was a second violation of the lease.  Jerusalem agreed that it would adjust the
amount of rent Jessie was required to pay or end the subsidy only if certain
eventualities occurred.  Specifically,
the rent could be adjusted or the subsidy ended if Jessie began to earn income
or failed to provide relevant information, or if the amount she was required to
pay towards rent and utilities rose to a certain level.  Under each scenario, Jerusalem was required
to give notice and afford Jessie the right to respond.  None of the eventualities detailed in the
lease that allowed either the ending of the subsidy or the adjusting of the
rent occurred, and Jerusalem never gave Jessie notice of an intent to end her
subsidy.[3]  The grounds for termination for which Jerusalem
gave notice would not support a decision to end the subsidy under the terms of
the lease.

  Nevertheless,
Jerusalem argues that because it gave notice to Jessie that it intended to
terminate her lease, and because she “chose to do nothing [, ] the lease was
terminated for material noncompliance [ ] as of August 31, 2005.”[4]  There are two specific problems with this
argument.  First, Jerusalem continued to
treat Jessie as if she were a lessee after August 31, 2005.  In a letter dated September 2, 2005,
Jerusalem wrote Jessie that “[a]s stated in your lease contract, rent and
related charges are due on of before the First day of the month and are
considered late on the Sixth day of the month.” 


  But
second, and more important, the lease did not require Jessie to do anything
when she was given notice of a proposed termination of her lease.  The lease gave her the right to meet with
Jerusalem.  If she wished such a meeting,
Jerusalem was required to meet with her and explain to her that she could
defend her actions in court.  As stated
above, Jerusalem agreed that it would only seek eviction on the grounds given
in the notice to terminate the lease. 
Jerusalem treated the lease as terminated because Jessie elected to “do
nothing,” but the lease simply did not permit Jerusalem to do this. 

  The
lease couches the notice to terminate in terms of a proposal.  It reads as follows: “If Jerusalem proposes
to terminate this agreement, Jerusalem agrees to give the Tenant written notice
and the grounds for the proposed termination.” 
Of course, a tenant may accept the proposal to terminate the lease or
may simply move out.  But Jessie did not
agree to move out.  Under the terms of
the lease she was entitled “do nothing” and to contest the termination of the
lease in court on the grounds for which she had been given notice. 

  Other
courts have considered the due process requirements of these kinds of
leases.  In Moon v. Spring Creek
Apts., 11 S.W.3d 427, 436 (Tex. App.–Texarkana 2000, no pet.), the
Sixth Court of Appeals held that insufficient notice had been given before an
eviction from federally subsidized housing. 
The court held that the failure to follow the notice requirements meant
that the landlord had no right to possession. 
Id. at 436. 
Similarly, in Newhouse v. Settgast, 717 S.W.2d 131, 134
(Tex. App.–Houston [14th Dist] 1986, no writ), the court held that a landlord
could not terminate a public housing lease except on the grounds outlined in
the lease.  See also 911 Glen Oak
Apartments v. Wallace, 88 S.W.3d 281, 285 (Tex. App.–Corpus Christi
2002, no pet.) (Upholding trial court judgment for tenant where evidence
failed to show violation of lease terms.).

  In
summary, Jerusalem agreed to allow Jessie to reside in an apartment for “$0”
per month in rent contingent on a subsidy it agreed not to end except under
circumstances not present.  Furthermore,
Jerusalem agreed to seek eviction only on the grounds contained in a formal
termination notice.  Jerusalem violated this
agreement when it sought to evict Jessie on grounds not contained in a formal
termination notice.[5]  Jerusalem
could have sought to end the subsidy on the grounds specified in the lease or
to evict Jessie on the grounds outlined in the notice of lease termination.[6]  Jerusalem elected to do neither, and so
Jessie retains the right to possess the property.  We sustain Jessie’s first issue.

Disposition

  We
reverse the decision of the trial court and render
judgment for Jessie. 

 

 

                                                                                         JAMES T. WORTHEN    

                                                                                                     Chief Justice

 

 

Opinion delivered October 25, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1]  There
are different types of federal housing assistance programs.  Under this program, Jerusalem was not only
the landlord, but also the local administrator of the subsidy.  Jerusalem had the responsibility to collect
eligibility information from Jessie and submit that information to the federal
government annually.  The subsidy was
linked to Jessie and to the Jerusalem Apartments in that Jessie could not take
the subsidy to another apartment, and Jerusalem could not give it to another
tenant. 





[2]
The fact that the lease was scheduled to end on the same day that Jerusalem
sought termination is of no moment.  The
federal rules governing these agreements require that the lease be
automatically renewed.  See 24 CFR
880.607(b)(iv) (2001).  At trial,
Jerusalem’s representative testified that the lease simply ended of its own
accord.  That argument is not advanced on
appeal. 





[3] In its brief, Jerusalem states that it did not
end Jessie’s subsidy, but that she was ineligible to receive a subsidy because
her tenancy had been terminated.  At
trial, Jerusalem’s representative testified that the lease expired and that
caused the subsidy to end.  Whichever is
the case, Jerusalem did something to cause the subsidy to end, and there is no
evidence that it followed the requirements of the lease before doing so.





[4]
In another part of the brief, Jerusalem argues that “Appellant did not respond
to the Notice, and her lease was terminated due to material noncompliance, as
allowed by the lease, and in full accordance with HUD regulations.”





[5] Jerusalem cannot, and does not, argue that the
notice of unpaid rent is notice of termination of the lease because 1) it is
not notice of termination of the lease, and 2) because Jerusalem argues that
there was no lease at all in effect at that time.  The lease does allow for termination in the
event of nonpayment of rent, but that is in the case where a tenant is
obligated to pay some portion of the rent. 
By the terms of this lease, Jessie was obligated to pay no rent.





[6] In a second issue, Jessie contends that the
notice of termination provided insufficient information to apprise her of the
complaint against her.  We do not reach
this issue because we have held that Jerusalem violated the agreement by not
seeking eviction on the grounds for which Jessie had been given notice.  We do note that the notice in this case does
not contain the dates of the alleged misconduct, and at least one court of
appeals has held that 

 

Footnote Continued.

 

a termination notice that does not provide the date of
alleged events and a specific allegation as to the violation of 

the lease is not effective
notice.  See Moon,
11 S.W.3d at 434.