

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00086-CV
_____


GARY HARRIS, Appellant

V.

PARIS HOUSING AUTHORITY, Appellee



On Appeal from the County Court
Lamar County, Texas
Trial Court No. C-11620



Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Chief Justice Morriss

Gary Harris appeals his eviction in a forcible entry and detainer action brought by the Paris Housing Authority (PHA) for alleged violations of lease rules and regulations. On appeal, Harris argues that the eviction notice failed to meet the specificity requirements mandated by Housing and Urban Development (HUD) regulations applicable to PHA and that failing to record the trial was error. Because we find that (1) the eviction notice provided to Harris failed to meet HUD specificity requirements and (2) Harris was harmed by that failure, we reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

Harris lived in a property located at 315 George Wright Homes in Paris, Texas (Property), pursuant to a Lease Agreement (Lease) with the PHA. This Lease contained several tenant obligations, including the following:

> E.     To abide by necessary and reasonable regulations promulgated by the [PHA] for the benefit and well[-]being of the Housing project and Tenants. These regulations are incorporated by reference in this Lease and are posted in a conspicuous and accessible manner in the project office. Violation of such regulations constitutes a violation of the Lease.
>
> . . . .
>
> J.     To act and to cause household members or guests to act in a manner that will:
>
>> 1.     Not disturb other resident's peaceful enjoyment of their accommodations; and
>>
>> 2.     Be conductive [sic] to maintaining all [PHA] projects in a decent, safe, and sanitary condition.
>
> K.     To assure that Tenant, any member of the household, a guest or another person under the Tenant's control, shall not engage in:

2

1. Any criminal activity that threatens the health, safety, or right of peaceful enjoyment of the [PHA]'s public house [sic] premises by other residents or employees of the [PHA], or;

2. Any drug-related criminal activity, on or off such premises. Any criminal activity, on or off such premises. Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit. For the purpose of this Lease, the term "Drug-related criminal activity" means the illegal manufacture, sell [sic], distribution, or use of a controlled substance (as defined in Section 102 of the Controlled Substances Act 21 USC 802).

3. Unlawful or disorderly conduct or behavior that is a hazard to safety or creates a nuisance.

L. To act in a cooperative manner with neighbors and [PHA] staff. To refrain from or cause members of Tenant's household or guests to refrain from acting or speaking in an abusive or threatening manner toward neighbors and [PHA] staff.

In accordance with HUD regulations, the Lease contained the following grievance procedures to

resolve most Lease violations:

The [PHA] reserves the right to exclude from the Grievance Procedure, any grievance concerning an eviction or termination of tenancy based on Tenant's criminal activity which threatens the health or safety of other Tenant's or [PHA] employees, including drug-related criminal activity, so long as the Secretary of HUD has determined that the state law under which evictions take place complies with the Federal definition of due process.

. . . .

When the [PHA] is required to offer Tenant the opportunity for a grievance hearing under the [PHA] grievance procedure for a grievance concerning the Lease termination, the tenancy shall not terminate (even if any Notice to Vacate under State or Local Law has expired) until the period to request a hearing has expired, or (if a hearing is requested) the grievance process has been completed.

. . . .

3

The [PHA]'s Grievance Procedure shall not apply to evictions or terminations of tenancy that involve.

> 1.    Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises of other tenants or employees of the PHA, or

> 2.    Any drug-related criminal activity on or off such premises.

On June 3, 2020, the PHA delivered a notice of lease violation and termination of the Lease, which gave Harris thirty days to vacate the Property. The notice stated,

> [W]e have had multiple complaints regarding you cursing and screaming at tenants/neighbors. We also have complaints of your harassment of Housing Authority maintenance employees trying to complete a work order that you reported to the office. You have exhibited activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or [PHA] employees which is a violation of your lease that you signed on 3/16/2020.

According to the notice, unnamed tenants told the PHA of "hollering and cursing" "[o]n several occasions," and there was an alleged incident on June 3, 2020, at approximately 1:30 p.m. when Harris was "aggressive and belligerent" with PHA maintenance personnel. The notice stated that Harris violated sections J, K, and L of the Lease and that he was not entitled to grievance procedures, even though no criminal activity was specifically alleged in the notice. The notice informed Harris that a forcible detainer complaint would be filed against him if he did not vacate the premises within thirty days.

On July 6, the PHA filed a forcible entry and detainer action against Harris in a Lamar County justice court. The petition stated that Harris violated Lease provisions because his actions "threatened the health, safety, or right of peaceful enjoyment of the [PHA]'s public house [sic] premises by other residents or employees of the [PHA]." In his answer, Harris argued that

4

the justice court lacked jurisdiction because the PHA failed to follow administrative procedures, including affording Harris a grievance hearing in accordance with HUD regulations. After the justice court ordered Harris's eviction and awarded possession of the Property to the PHA, Harris appealed to the County Court of Lamar County.

At the resulting bench trial, the PHA introduced into evidence the notice of violation, Lease, PHA documents showing that its grievance procedures did not require a grievance hearing for "[a]ny criminal activity that threatens the health, safety, or rights to peaceful enjoyment of the premises of other residents or employees of the PHA," and criminal trespass warnings issued two weeks after the notice of termination. The record also contains a video that Harris introduced showing his encounter with maintenance workers on June 3, 2020.[1] There is no reporter's record of the bench trial.

However, a bill of review hearing showed that several women went to PHA's director, Sally Ruthart, crying and complaining about Harris. The hearing showed that there was no evidence that anyone from the PHA had spoken with Harris about the complaints and that Ruthart could not provide any specific dates or events of Harris's issues with other tenants. Harris had also introduced his PHA file, which showed no negative tenant information, notice of lease violations, or complaints. At the hearing, Harris argued that the video of the interaction with maintenance staff showed that there was no unacceptable behavior by him. The

---

[1]The video shows that Harris pointed out the work he wanted maintenance workers to do and that the maintenance workers left without making repairs. While the video demonstrates Harris's frustration with lack of repairs, our review of the video fails to reveal aggressive or belligerent behavior.

maintenance supervisor had also testified that there were no threats or acts of violence by Harris and that the maintenance men were never in any type of danger or perceived danger.

According to Harris, tenant Daneshia Harmon said she was afraid of Harris, but gave no specific reason why other than his prior 1989 murder conviction. Another tenant, Mary Bailey, did not provide any specific testimony against Harris, and her testimony showed that there was no direct interaction between the two of them. Instead, Bailey's criminal trespass warning was issued June 17, two weeks after the notice of violation, because Harris's caretaker came to Bailey's door to ask a question about her granddaughter who she also looks after. The caretaker and another witness who had seen Harmon and Harris interact with each other testified that they had never seen Harris violate any of the Lease provisions or make threats to others. Harris's counsel argued that, even if the complaints were true, he would still be entitled to a grievance procedure, but the PHA had denied him a grievance hearing. The PHA represented that there was testimony of Harris's "menacing, profane, threatening, and harassing behavior towards both tenants, staff, basically everyone out there," and that he was a "problem tenant." The factual basis for these statements was not provided at the bill of review hearing.

The trial court entered judgment in favor of the PHA and awarded it possession of the Property. The trial court's findings of facts included the following:

- Regarding the June 3, 2020, maintenance request by Harris, "Maintenance Superintendent, Thomas Scott, testified to Mr. Harris'[s] belligerent behavior and refusal to allow them to complete the requested work order."

- "Sally Ruthart testified that certain residents and staff felt threatened by Mr. Harris. Ms. Ruthart testified that certain females were especially fearful."

6

- "Sally Ruthart testified as to Mr. Harris'[s] past criminal record including incarceration for a murder conviction. Defendant's objection as to the relevance regarding this testimony was overruled."

- "George Wright Homes residents Daneshia Harmon and Mary Bailey both testified to Defendant's menacing and threatening behavior."

The trial court concluded that Harris breached his tenant obligations under the Lease.

Harris's formal bill of exception showed that he objected to testimony and argument concerning criminal activity because no criminal activity was specified either in the PHA's petition or in the notice of lease violation. After overruling his objection, the trial court allowed the testimony of criminal trespass warnings being issued after the notice was written. Harris also objected to the evidence of his criminal history on the grounds of relevance because it was over ten years old and was immaterial since the PHA knew about the 1989 murder conviction when it reviewed and approved Harris's housing application. The bill of exception also said that Ruthart, Harmon, and Bailey all testified that Harris was dangerous based on the prior conviction.

*(1) The Eviction Notice Provided to Harris Failed to Meet HUD Specificity Requirements*

"To terminate a tenancy in federally subsidized housing, federal regulations and due process both require adequate notice detailing the grounds for termination." *Moon v. Spring Creek Apartments*, 11 S.W.3d 427, 433 (Tex. App.—Texarkana 2000, no pet.). "The federal regulations provide that 'the landlord's determination to terminate the tenancy shall be in writing and shall . . . state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense.'" *Id.* (quoting 24 C.F.R. § 247.4(a)(2)). Failure to comply with Section 247.4 renders the termination of a lease invalid. 24 C.F.R. § 247.3. "[I]n any judicial

7

action instituted to evict the tenant, the landlord must rely on grounds which were set forth in the termination notice . . . ." *Moon*, 11 S.W.3d at 433 (quoting 24 C.F.R. § 247.6(b)). "Moreover, due process requires a timely and adequate notice detailing the reasons for the proposed termination, because a denial of federal housing benefits, like denial of other forms of public assistance, is a denial of an interest protected by the Fourteenth Amendment." *Id.* (citations omitted).

"A forcible detainer action is . . . available to a landlord [only] when the landlord lawfully terminates his tenant's lease, because it is the lawful termination of the lease that gives rise to the landlord's legal right to possession." *Id.* at 435 (citing TEX. PROP. CODE ANN. § 24.002). Thus, PHA "has the burden of providing an adequate eviction notice to [Harris] as a prerequisite to maintaining a forcible detainer action." *Id.* Because "federal regulations state that no termination of a tenancy in a federally subsidized project shall be valid unless notice is provided to the tenant detailing the reasons for the eviction with enough specificity so as to enable the tenant to provide a defense," "if the landlord fails to provide proper notice to a tenant in federally subsidized housing, the tenant's lease will not be terminated and the landlord will have no right to possession." *Id.* at 436 (citing 24 C.F.R. §§ 247.3(a), 247.4(a)(2)).

"[A]s a prerequisite to maintaining a forcible detainer action, [PHA] had the statutory duty to lawfully terminate Moon's lease with the issuance of proper notice." *Id.* We review de novo the issue of whether the PHA notice was sufficient to comply with federal regulations. *Id.* at 432–33.

8

"Termination notices for federally subsidized housing have been found to be insufficient where they contain only one sentence, are framed in vague and conclusory language, or fail to set forth a factual statement to justify termination." *Id.* at 433. For example, notices that fail to specify dates of alleged violations or the individuals involved, recite broad language from regulations, reference unspecified illegal acts, or list generic adverse impacts are insufficient. *Id.* (finding insufficient notice that tenant violated lease provision 23B by "endangering [the] welfare of other tenants").

Here, while the notice stated that PHA had received "multiple complaints" of Harris "cursing and screaming at tenants/neighbors," it failed to specify the dates of the alleged incidents or the people involved. While it alleged that Harris was "belligerent and aggressive" and "harass[ed]" maintenance workers on a particular day, the language was vague and conclusory. Although the notice alleged that Harris had violated a tenant obligation described in Section K, there were no specific factual allegations setting forth any criminal activity or unlawful or disorderly behavior that was a hazard to safety or created a nuisance. The complaint that Harris had "exhibited activity that threaten[ed] the health, safety, or right to peaceful enjoyment of the premises by other residents or [PHA] employees" was also vague and conclusory and parroted the broad language of the PHA regulations. As we did in *Moon*, we find that the notice to Harris in this case failed "to set forth a factual statement to justify termination" of the Lease. *Moon*, 11 S.W.3d at 433; *see Nealy v. Southlawn Palms Apartments*, 196 S.W.3d 386, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (notice that tenant engaged in

9

undesirable behavior, without detailing that behavior or setting forth dates of alleged incidents or people involved, was impermissibly vague).

Also, federal regulations require public housing agencies to establish a grievance procedure to "assure that a [public housing agency] tenant is afforded an opportunity for a hearing if the tenant disputes within a reasonable time any [public housing agency] action or failure to act involving the tenant's lease" or the public housing agency's "regulations which adversely affect the individual tenant's rights, duties, welfare or status." 24 C.F.R. § 966.50. The federal regulations do allow housing authorities to bypass grievance procedures, under specific circumstances:

> [T]he public housing authority need not follow its administrative grievance procedure if termination of the tenancy or eviction involves the following:
>
> (A)   Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises of other residents or employees of the PHA [Public Housing Authority];
>
> (B)   Any violent or drug-related criminal activity on or off such premises; or
>
> (C)   Any criminal activity that resulted in felony conviction of a household member.

*Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV, 2021 WL 1199043, at *6 (Tex. App.—San Antonio Mar. 31, 2021, no pet.) (mem. op.) (second alteration in original) (quoting 24 C.F.R. 966.51(a)(2)(i)). But, at the bench trial, there was no evidence supporting any criminal activity committed by Harris, and the trial court made no finding that he engaged in any criminal activity. Even so, the PHA's notice claimed an exception to the grievance procedure. Even assuming that this exception was applicable, a public housing authority, in not providing a tenant

with an administrative grievance procedure, must still comply with the following notice requirements:

> When the [public housing authority] is not required to afford the tenant the opportunity for a hearing under the [public housing authority] administrative grievance procedure for a grievance concerning the lease termination . . . , and the [public housing authority] has decided to exclude such grievance from the [public housing authority] grievance procedure, the notice of lease termination under paragraph (l)(3)(i) of this section shall:
>
> (A)    State that the tenant is not entitled to a grievance hearing on the termination.
>
> (B)    Specify the judicial eviction procedure to be used by the [public housing authority] for eviction of the tenant, and state that HUD has determined that this eviction procedure provides the opportunity for a hearing in court that contains the basic elements of due process as defined in HUD regulations.
>
> (C)    State whether the eviction is for a criminal activity as described in § 966.51(a)(2)(i)(A) or for a drug-related criminal activity as described in § 966.51(a)(2)(i)(B).

24 C.F.R. § 966.4(l)(3)(v).

The notice here simply informed Harris that "a forcible detainer complaint [would] be filed" against him if he failed to timely vacate. As in *Corpus Christi Housing Authority v. Lara*, "[t]he notice in the instant case did not specify which court would hear the [forcible entry and detainer] action." *Corpus Christi Hous. Auth. v. Lara*, 267 S.W.3d 222, 227 (Tex. App.—Corpus Christi 2008, no pet.) (finding insufficient notice where notice failed to specify which court would hear the action even though the notice stated that a "legal action regarding eviction will be instituted for possession" if tenant failed to timely vacate); *see Ledezma v. Laredo Hous. Auth.*, No. 04-19-00563-CV, 2021 WL 1199043, at *6 (Tex. App.—San Antonio Mar. 31, 2021, no pet.) (mem. op.) (discussing a notice that informed tenant that eviction proceedings would be

11

filed in state court). Further, the notice failed to state that HUD had determined that the eviction procedure provided the opportunity for a hearing in court that contains the basic elements of due process as defined in HUD regulations. *See id.*

We find that the PHA's notices failed to comply with either Section 247.4 or Section 966.4(l)(3)(v) of Volume 24 of the Code of Federal Regulations. *See* 24 C.F.R. §§ 247.4, 966.4(l)(3)(v).

*(2)     Harris Was Harmed by that Failure*

There is a split of authority on whether a tenant is required to show harm when a public housing authority has failed to provide proper notice. *See Moon*, 11 S.W.3d at 435. In any event, we find that Harris was harmed in this case.

"In considering whether a tenant is harmed by deficient notice, we must decide if the due process goals for the required notice have been sufficiently satisfied." *Id*. In addition to other factors, we determine whether "(1) adequate notice is provided so as to enable the tenant to prepare a defense, (2) the tenant is allowed to be represented by counsel, (3) the tenant is given an opportunity to present evidence, cross-examine witnesses, and present a defense, and (4) the decision is rendered on the merits." *Id.* "An error is harmful if it probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the court of appeals." *Id.* (citing TEX. R. APP. P. 44.1).

Here, as in *Moon*, "the notice deficiency was not merely hypertechnical, but was substantial and significant in that key information was omitted, thereby defeating one of the purposes of the notice." *Id.* While Harris was represented by counsel, counsel informed the

12

PHA on June 17, 2020, that its notice was deficient because it failed to specify any conduct that would trigger the termination of the Lease and that Harris was entitled to grievance proceedings because the notice failed to allege any criminal activity. Harris answered in both the justice court and the trial court that the notice was so deficient that it did not allow him to prepare a defense because it contained no specific information about the allegations and that PHA had failed to follow HUD grievance procedures before filing suit, which deprived Harris of his due process rights under both the Lease and federal regulations. Harris requested, but was denied, the opportunity to conduct discovery in the justice court. The notice of appeal was filed with the trial court on July 28, Harris's pleading complaining that he had not had the opportunity to prepare a defense was filed August 3, the trial occurred August 10 without counsel seeking discovery, and the trial court's judgment was signed August 19. Although there was no record of the trial, the bill of review demonstrates that Harris had objected to evidence introduced outside of the scope of the notice provided by the PHA, but those objections were overruled. Additionally, neither party waived the making of a record at trial, and Harris's counsel said that "indications at the time made it appear that audio recording was being made as a common practice in this area" because "the microphone lights were on, the little green light was on." While there was a decision on the merits, the findings of fact do not set forth the underlying facts supporting characterizations of Harris being belligerent, aggressive, menacing, or threatening. As a result, aside from conclusory statements, nothing in this record reveals the underlying facts that would support a finding of any lease violation sufficient to terminate Harris's Lease in the absence of proper grievance proceedings.

13

For the reasons set out above, we reverse the trial court's judgment and remand the matter to the trial court with instructions to abate the underlying action until sufficient notice is provided and the proper procedures have been followed.

Josh R. Morriss, III
Chief Justice

Date Submitted:     June 1, 2021
Date Decided:      July 30, 2021