Hilda **HINOJOSA**, Appellant,

v.

**HOUSING AUTHORITY OF THE CITY OF CORPUS CHRISTI,**
Texas, Appellee.

No. 13–94–187–CV.

Court of Appeals of Texas,
Corpus Christi.

April 6, 1995.

Rehearing Overruled April 27, 1995.

Nancy B. Delong, Coastal Bend Legal Services, Corpus Christi, for appellant.

William Robert Anderson, III, Julie N. Dickerson, Sorrell, Anderson, Lehrman, Wanner & Thomas, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a forcible entry and detainer action. Following a jury trial, the court entered judgment on the verdict awarding possession of property at 1420 Verde Court, La Armada I, Corpus Christi, Texas, 78415, to the Housing Authority and ordering that Hilda Hinojosa deliver possession of the property to the Housing Authority. Hinojosa contends that the Housing Authority denied her due process of law by failing to provide her adequate notice to terminate her lease. Additionally, Hinojosa complains about the trial court's evidentiary rulings. We affirm the trial court's judgment.

## Facts

Hinojosa is a tenant at 1420 Verde Court, a Housing Authority property. In December 1992, after having problems with Hinojosa's son, Marcos Zavala, Hinojosa and the Housing Authority agreed that Zavala would not reside at 1420 Verde Court with Hinojosa and that he would remain off of the property for six months. When problems with Zavala continued on the property, in March 1993, the Housing Authority commenced proceedings to terminate Hinojosa's lease by sending her a Notice of Termination of Lease. By this notice, the Housing Authority stated that it was terminating her lease effective April 29, 1993, because she "allowed other persons on the premises with your consent to conduct themselves in a manner which disturbs your neighbors' peaceful enjoyment of their accommodations." The notice informed Hinojosa that she could discuss the matter with the manager within 10 days from the date of the letter. Additionally, the letter informed Hinojosa that she was entitled to a grievance hearing should she be inclined to pursue one. Finally, the letter stated that she was authorized to examine Housing Authority documents concerning the termination of tenancy.

In June 1993, the Housing Authority filed a forcible entry and detainer action in justice court. Hinojosa answered, and, after an unfavorable ruling by the justice court, appealed to the county court-at-law. In county court, Hinojosa filed a motion to dismiss the de novo forcible entry and detainer action asserting that the Housing Authority's termination of lease notice did not comply with federal regulations and state law. By her motion, Hinojosa contended that the notice failed to state the reasons for lease termination with sufficient specificity to enable her to prepare a defense, thus denying her due process. The Housing Authority responded and submitted its motion to abate proceedings so that it could cure the defects if any existed. Following a hearing, on October 29, 1993, rather than dismiss the case, the county court abated the proceedings for sixty days during which time the Housing Authority was to correct any defects in the notice to terminate lease and notice to vacate should such defects exist. On November 30, 1993, the Housing Authority delivered to Hinojosa an amended, more detailed notice of lease termination. The notice provided as follows:

Notice is hereby given that the Housing Authority of the City of Corpus Christi, Texas, is terminating your lease effective at 4:30 p.m. on Thursday January 6, 1994, based on the following lease violations that include but are not limited to:

Failure to supervise your household and/or other persons who are on the premises with your consent including but not limited to your son and/or guest Mark Zavala (DOB 07/07/77 SSN 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) and allowing them to conduct themselves in a manner that disturbs your neighbor's peaceful enjoyment of their premises. Although Housing Authority records reflect that Mark Zavala was removed from the lease for 1420 Verde in mid December 1992, witnessed reports indicate Mark Zavala continues to reside at 1420 Verde. Further, witnessed reports indicate problems that include but are not limited to Mark Zavala's behavior and involvement in gang-related type activities. Additionally, there are witnessed reports of verbal assaults on Housing Authority residents, which threaten the health and safety of other residents and are disruptive to the peaceful enjoyment of the premises.

Failure to maintain the leased unit for your exclusive use and failure to report additional persons that are not identified in your lease as part of your household, i.e., you are allowing and have allowed Mark Zavala to reside in your leased unit as witnessed by several Housing Authority employees.

Failure to control or restrain of your household and/or other persons who are on the premises with your consent, specifically your son Mark Zavala to refrain from illegal or other activity, i.e., witnessed reports of gang-related activities such as "clicking" and the November 19, 1992 assault, which impairs the social environment of the housing development.

Should you wish to discuss this matter before further action is taken, please contact Sandra Green, Coordinator for Housing Management within ten (10) days from the date of this letter. If this matter is not resolved to the satisfaction of the Housing Authority, you will be evicted thirty (30) days from the date of this notice.

In addition, at your request, you are entitled to a grievance hearing should you be inclined to pursue one. A copy of the Housing Authority Grievance Procedures is available at the Development Manager's Office. Finally, you are authorized to examine (and make copies at your own expense) any relevant Housing Authority documents, records or regulations directly related to this termination of tenancy.

On January 4, 1994, Hinojosa was provided a second grievance hearing on the amended notice. Again, eviction was recommended by the hearing officer. When Hinojosa did not vacate the property, the Housing Authority proceeded with its forcible entry and detainer action on the amended notice to terminate in the county court. Once again, Hinojosa filed a motion to dismiss asserting that the amended notice did not meet the federal regulatory prerequisites for due process because it did not state the reasons for eviction with enough specificity for her to prepare a defense. The motion was denied, a jury empaneled, and, following a verdict favoring the Housing Authority, the court entered judgment ordering Hinojosa to deliver possession of the property to the Housing Authority.

## Due Process

By point of error one, Hinojosa contends that the county court erred by abating rather than dismissing the forcible entry and detainer action since the first notice to terminate was defective. By point three, she contends that the amended notice to terminate was not specific enough to apprise her of the factual basis for eviction and thus she was denied due process of law. By points four and five, she contends that the county court erred in proceeding to trial on the amended notice without first litigating the issues it raises in the amended notice in the justice court.

Due process elements with regard to a termination of tenancy in a public housing development are set forth in the Code of Federal Regulations—Housing and Urban Development. These due process elements are as follows:

1) adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;

2) right of the tenant to be represented by counsel;

3) opportunity for the tenant to refute the evidence presented by the Public Housing Authority including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have; and

4) a decision on the merits.

24 C.F.R. § 966.53(c).

■ Initially we note there exists no specific language in the federal regulations requiring a court to dismiss rather than abate a forcible entry and detainer action for failure to give sufficient notice. We conclude, after considering Hinojosa's due process interests and protections and judicial economy, that in this forcible entry and detainer action the county court did not err in abating the proceedings for sixty days so that the Housing Authority could correct defects in its notice of termination if such existed.

■ In many areas of the law, abatement is appropriate when notice prerequisites are

missing. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 4.01 (Vernon Pamphlet 1994) (medical malpractice); Tex.Bus. & Com.Code Ann. § 17.505 (Vernon Supp.1994) (deceptive trade practices). We find the reasoning of *Schepps v. Presbyterian Hosp.*, 652 S.W.2d 934 (Tex. 1983), persuasive. In determining that abatement for sixty days for defective notice in a medical malpractice action was proper, the *Schepps* court reviewed the purpose of the Medical Malpractice Act and noted that the notice provision in the Act was to encourage pre-suit negotiations and avoid excessive litigation costs. *Id.* at 938. The *Schepps* court found that abatement accomplished these goals as well as protected the medical malpractice plaintiff's right to maintain the lawsuit. *Id.*

In reviewing the due process protections provided in the federal regulations applicable in this case, we find that the goals are to provide adequate notice; that the tenant be represented by counsel; that the tenant have the opportunity to present evidence, cross-examine witnesses, and present a defense; and that a decision be rendered on the merits. *See Escalera v. New York Housing Auth.*, 425 F.2d 853 (2d Cir.1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). In this case, the abatement for the Housing Authority to clarify defects in the notice, if such existed, did not infringe upon or frustrate Hinojosa's due process rights. Additionally, by abating the proceedings, time and effort previously expended by both parties were not wasted. We overrule point one.

■ By point three, Hinojosa contends that even if abatement was proper, the amended notice of termination was not specific enough to apprise her of the factual basis for eviction. She contends that the amended notice did not provide her with adequate procedural safeguards. She argues that the informal and formal grievance conferences held during an abatement of a pending case provides none of the contemplated procedural due process protections.

Hinojosa complains that the amended notice lists no specific acts of misconduct and is vague and conclusory. She argues that the notice does not state the type of gang-related activities in which Zavala was engaged. She argues that the statement about verbal assaults was conclusory because it did not inform her to whom the statements were made or when or where the statements were made. She argues that there was no way she could have prepared a defense or respond to the conclusory language. Hinojosa argues that the amended notice raised new issues not presented in the original notice including her failure to control Zavala from illegal or other witnessed activities including clicking.[1] The Housing Authority responds that the amended notice provided sufficient information to allow Hinojosa to prepare a defense.

We note that the amended notice lists clicking, verbal assaults, and a November 1992 assault. The notice also informs Hinojosa of gang-related activities occurring at the property after December 1992, after she had agreed that Zavala would not be on the premises. The amended notice informed Hinojosa that she could have reviewed her file with the Housing Authority related to the termination of her tenancy.

We conclude that the amended notice provided adequate notice to Hinojosa of the grounds for terminating her tenancy. The amended notice provided Hinojosa with the basis for the suit and the acts and activities in violation of the lease. In reviewing the record, Hinojosa confronted witnesses, cross-examined and called her own witnesses. She filed no motion for continuance or indicated to the county court in any way that she was unprepared or unaware of a witness called or unable or unwilling to proceed to trial. Hinojosa had the opportunity and served interrogatories to the Housing Authority requesting the names of individuals with relevant knowledge. These names were provided to her and were the only witnesses called by the Housing Authority at trial. In reviewing the statement of facts, we note that Hinojosa presented her case, cross-examined wit-

---

1. "Clicking" is a gang ritual whereby the gang members form a circle around a new initiate, and they all take turns beating him.

nesses, and called five witnesses in her defense.

We conclude that the amended notice of termination was sufficient because it specified the family member, Zavala, the nature of the violation, the gang-related activity, and his presence on the property in violation of the agreement Hinojosa entered stating that he would stay away from the property. We overrule point three.

■ By point five, Hinojosa contends that the trial court denied her due process because it proceeded to a jury trial on issues presented in the amended notice not contained in the first notice and therefore were not presented in a justice court. Without citing a regulation or rule, she contends that due process entitles her to a hearing in justice court on the amended notice of termination before it could be heard in the county court. The Housing Authority responds that due process entitles Hinojosa to a hearing only within the federal administrative framework which she received.

In general, after a tenant receives notice of termination, the tenant is entitled to an informal hearing, a formal grievance hearing, and a review of the Housing Authority file. 24 C.F.R. § 966.4($l$)(3). The federal regulations state that the Housing Authority may bring a court action in a state or local court for termination of a lease and possession of property. The federal regulations do not specify any particular court.

■ Texas Rule of Civil Procedure 574a provides that either party may plead any new matter in the county or district court which was not presented in the court below, but no new grounds of recovery shall be set up by the plaintiff. We conclude that the amended notice did not present any new grounds of recovery but only clarified the original notice sent by the Housing Authority to Hinojosa.

Hinojosa had two informal grievance hearings and two formal grievance hearings. She also received a jury trial on the merits. All resulted in recommendations that Hinojosa be evicted.

We hold that, because Hinojosa received a proper Notice of Termination of Lease, participated in the informal and formal hearings, and had the opportunity to review her file, she was aware of the complaints against her, responded to the charges, and prepared a defense. Hinojosa received due process. We overrule point five.

### Evidentiary Rulings

■ By points of error six and seven, Hinojosa contends that the trial court erred in admitting evidence of wrongdoing by Hinojosa and her household that were not mentioned in the amended notice. She contends that the admission of this evidence probably caused the rendition of an improper judgment.

■ The admission of evidence is a matter within the trial court's discretion. *Jones v. Jones,* 890 S.W.2d 471 (Tex.App.— Corpus Christi 1994, writ requested); *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). To obtain reversal of a judgment, based upon error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex. R.App.P. 81(b)(1); *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989). Ordinarily, we will not find reversible error for an erroneous evidentiary ruling in a case where evidence is admitted that is cumulative and not controlling on a material issue in the case. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). An improper admission of evidence does not as a rule constitute reversible error when there is other competent evidence of the fact in question in the record. *Id.* Once finding error in admitting evidence, we must, when determining whether the admission of evidence was harmful, review the entire record. *McCraw v. Maris,* 828 S.W.2d 756, 757–58 (Tex.1992). In reviewing the record for harmfulness, we look to see whether the judgment turns on the evidence that should have been excluded. *Mancorp., Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex.1990).

Specifically, Hinojosa complains about the Housing Authority's introduction of an alleged 1990 assault in which she and her son

were involved. In reviewing the record we conclude that there exists no reversible error relating to the Housing Authority's reference at trial to the 1990 assault.

The record shows that the parties engaged in a lengthy discussion outside the jury's presence about the admissibility of the alleged 1990 assault. During proceedings before the jury, the only mention of a 1990 incident was when the Housing Authority was reviewing the process leading up to the lease termination. The Housing Authority's records reflected that Hinojosa had been given a notice to vacate in June 1990. When asked why that notice was given, Pat Campos, the manager of the property at the time, stated that Hinojosa had been in a fight. We find no other reference to the 1990 assault. In reviewing the trial proceedings we conclude that the trial court did not abuse its discretion in allowing the reference to the 1990 alleged assault. Error, if any existed, was harmless. We overrule points six and seven.

Having addressed all of Hinojosa's dispositive points of error, and having concluded that Hinojosa received due process of law, we affirm the trial court's judgment. Tex. R.App.P. 90(a).