

NUMBER 13-07-00277-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CORPUS CHRISTI
HOUSING AUTHORITY ,                                              Appellant,

**v.**

MARIA LARA,                                                       Appellee.

### On appeal from the County Court at Law No. 5
### of Nueces County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Garza and Benavides
### Opinion by Chief Justice Valdez

Appellant, Corpus Christi Housing Authority, appeals from an order dismissing its

forcible detainer action against appellee, Maria Lara, a housing authority tenant.[1]  *See* TEX.

---

[1] The Corpus Christi Housing Authority is a federally subsidized agency, and it is regulated by title 42, Chapter 8 of the United States Code and title 24 of the Code of Federal Regulations.  *See* 42 U.S.C. §§ 1401-1440; 24 C.F.R. §§ 0-4199.

PROP. CODE ANN. § 24.002 (Vernon 2000). The housing authority terminated Lara's

residential lease because she allegedly violated lease provisions, provided Lara with formal

notice of the lease termination, and subsequently obtained an eviction judgment from a

justice court. *See id.* § 24.004 (Vernon 2000). Lara appealed to a county court at law and

moved to dismiss the housing authority's action because its notice was defective under

controlling federal rules. The trial court granted Lara's dismissal motion. By two issues,

the housing authority contends that the trial court erred by dismissing its suit because: (1)

its notice was adequate; and (2) even if the notice was inadequate, Lara had actual notice

of the lease termination. We reverse and remand.

## I. BACKGROUND[2]

Lara leased an apartment from the housing authority on November 27, 1995, and

she has lived in a housing authority apartment ever since. The housing authority

terminated Lara's lease on October 10, 2006 because Lara, her minor son, and her

daughter allegedly engaged in criminal activity, which was a violation of the lease

provisions and federal law.

### A. Alleged Criminal Activity

The events underlying the lease termination occurred on the evenings of September

19 and October 2, 2006. On September 19, Officer J. Cantu received a call regarding a

speeding motorcycle on the street in front of Lara's apartment. According to Officer

Cantu's report, he witnessed a motorcycle traveling at a high rate of speed on a street

---

[2] The trial court granted Lara's dismissal motion on the pleadings. It, therefore, did not hear live testimony, and consequently, this case is submitted without a reporter's record. *See* TEX. R. APP. P. 34.1 (providing that the appellate record consists of the clerk's record, and if necessary to the appeal, the reporter's record). We take note of the allegations of criminal activity from police reports that the housing authority subjoined to the termination notice.

where children were playing. Upon stopping the motorcycle, Officer Cantu questioned the driver, who identified himself as P.L., Lara's minor son. P.L. was not licensed to operate a motorcycle, and the motorcycle was not registered. Officer Cantu then made contact with Lara and her daughter, who "were in aggressive postures and were vulgar and vocal" to him according to his report. Officer Cantu's report noted that P.L. was "cited," but it did not specify what, if any infractions were included in the citation. Officer Cantu did not arrest anyone during his investigation.

On October 2, Officer Casares was dispatched to investigate a reported disturbance at Lara's neighbor's apartment. Upon arriving, Officer Casares met with Rosario Navarro, Lara's neighbor. Navarro told Officer Casares that Lara threatened her because she would not provide false testimony about the incident that occurred on September 19. Navarro recounted to Officer Casares that one of Lara's male relatives approached her in an aggressive manner and pushed her away with his stomach. Navarro also advised Officer Casares that she had heard that Lara was making death threats against her. Navarro expressed to Officer Casares that she feared for her safety because of previous incidents and threats.

## B.     Lease Termination and Eviction Proceedings

The housing authority terminated Lara's lease when it received the reports from Officers Cantu and Casares. On October 10, 2006, the housing authority provided Lara with a "72-[H]our Notice to Terminate the Lease and Notice to Vacate," which claimed that Lara had violated lease provisions by engaging in prohibited conduct. The notice stated that Lara's lease would be terminated on October 13, 2006. It contained copies of the reports of Officers Cantu and Casares. The notice alleged that the following lease

3

provisions were violated:

> To act and cause other person(s) who are on premises with Resident's consent to act in a manner which will not disturb residents' or neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining premises and the development in a decent, safe and sanitary condition.

> To refrain from illegal or other activity that impairs the physical or social environment of the development.

> To act in an orderly manner in dealings with [m]anagement and/or other residents and not to harass or retaliate against management and/or other residents in any way so long as management and/or other residents reasonably and peacefully exercise any right granted under the lease.

> To refrain from committing any act of physical violence to persons or property on or off premises.

> The notice warned Lara that she was not entitled to a grievance hearing, but it

stated that:

> [T]his eviction procedure provides the opportunity for a hearing in [a] court that contains the basic elements of due process as defined by HUD [the United States Department of Housing and Urban Development] regulations. **If you do not vacate on or before the expiration of 72 Hours from the date of this notice, October 13, 2006, legal action regarding eviction will be instituted for possession thereof**.

(emphasis in original). Lara refused to vacate the premises, and the housing authority filed

suit for forcible detainer in a justice court. *See* TEX. PROP. CODE ANN. §§ 24.002, 24.004.

The justice court entered a judgment of eviction in favor of the housing authority. Lara

appealed to a county court at law.

The housing authority's petition in county court repeated the facts contained in the

police reports. The housing authority alleged that Lara violated lease provisions because

she: (1) did not abide by the admission and continued occupancy policy; (2) disturbed other

4

residents' peaceful enjoyment of the premises; and (3) engaged in criminal activity that impaired the physical or social environment of the development. The housing authority prayed for possession of Lara's apartment, actual and exemplary damages, court costs, and reasonable attorney's fees.

Lara answered the housing authority's petition with a general denial. She also filed special exceptions, a plea in abatement, and a motion to dismiss. In her dismissal motion, Lara posited that federal regulations mandated that the housing authority's lease termination notice "[s]pecify the judicial eviction procedure to be used," *see* 24 C.F.R. § 966.4(l)(3)(v)(B) (2008), and "[s]tate whether the eviction is for a criminal activity as described in § 966.51(a)(2)(i)(A) or for a drug-related criminal activity . . . ," *see* 24 C.F.R. § 966.4(l)(3)(v)(C) (West 2008). Lara argued that the notice she received did not contain either of the federally mandated statements. Lara asserted that the notice did not effectively terminate her right of possession because of its defects and that the eviction proceeding that the housing authority instituted in the justice court violated state law because it was instituted before an effective lease termination. *See* TEX. PROP. CODE ANN. § 24.005(a)(1) (Vernon 2000) (providing that the landlord must give a tenant who defaults at least three days' written notice to vacate the premises before the landlord files a forcible detainer suit).

The housing authority responded to Lara's dismissal motion by arguing that the notice sufficiently informed Lara of the alleged criminal activity and the judicial process. The housing authority further argued that even if the notice were defective, it did not deprive the trial court of subject-matter jurisdiction because the statute's purpose was informational rather than jurisdictional. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71,

76-77 (Tex. 2000); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 351, 358 (Tex. 2001).

On February 22, 2007, the county court granted Lara's dismissal motion and issued findings of fact and conclusions of law. In its legal conclusions, the trial court found that the federal regulations at issue are subject to review for strict compliance and that failure to satisfy the notice requirements deprives the trial court of subject-matter jurisdiction. The housing authority filed a motion for new trial, which the trial court denied. This appeal ensued.

## II. DISCUSSION

By two issues, the housing authority complains that the trial court erred in dismissing its forcible detainer action. First, the housing authority claims that its notice complied with section 966.4(l)(3)(v)(B) of title 24 of the Code of Federal Regulations. *See* 24 C.F.R. § 966.4(l)(3)(v)(B). Second, the housing authority contends that even if the notice failed to comply with the applicable federal regulations, the trial court retained subject-matter jurisdiction because Lara had actual knowledge of the eviction proceeding; therefore, she was not harmed by any deficiency in the notice.

## A.    Standard of Review

In this case, the trial court concluded that it lacked subject-matter jurisdiction over the housing authority's eviction action. We review a trial court's ruling on subject-matter jurisdiction de novo. *Tex. Natural Res. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We are also called upon to review how federal regulations affect this state's lease termination and eviction procedures. We construe the text of an administrative rule under the same principles we construe a statute. *See, e.g., Phillips Petroleum Co. v. Texas Comm'n on Envtl. Quality*, 121 S.W.3d 502, 507 (Tex. App.–Austin 2003, no pet.) (citing

6

*Tex. Gen. Indem. Co. v. Tex. Workers' Comp. Comm'n*, 36 S.W.3d 635, 641 (Tex. App.–Austin 2000, no pet.)) (providing that state administrative rules and statutes are reviewed for intent). We will, therefore, ascertain and give effect to the rule drafter's intent for the provisions we are construing. *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005) (providing how a court should determine legislative intent).

When a trial court issues findings of fact and conclusions of law, as the trial court did in this case, we may review the findings of fact for legal and factual sufficiency and review the conclusions of law de novo. *Silbaugh v. Ramirez*, 126 S.W.3d 88, 94 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

**B.    Notice**

By its first issue, the housing authority asserts that the trial court erred in concluding that the notice was insufficient. Lara moved for dismissal on the ground that the termination notice did not specify the judicial procedure to be used or specify the kind of criminal activity that Lara was alleged to have engaged in. The relevant federal regulation provides that when the public housing authority:

> is not required to afford the tenant the opportunity for a hearing under the PHA administrative grievance procedure for a grievance concerning the lease termination (see § 966.51(a)(2)), and the PHA has decided to exclude such grievance from the PHA grievance procedure, the notice of lease termination under paragraph (l)(3)(i) of this section shall: specify the judicial eviction procedure to be used by the PHA for eviction of the tenant, and state that HUD has determined that this eviction procedure provides the opportunity for a hearing in court that contains the basic elements of due process as defined in HUD regulations.

24 C.F.R. § 966.4(l)(3)(v)(B) (emphasis added). The housing authority contends that Texas has only one judicial eviction procedure, and, therefore, its generic notice was

7

sufficient. We disagree.

Under our rules of statutory construction, "shall" is generally construed to be mandatory, but may be directory when this interpretation is most consistent with the Legislature's intent. *See* TEX. GOV'T CODE ANN. § 311.016 (Vernon 1998); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). To determine whether the Legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999); *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (Tex. 1956). Even if a statutory requirement is mandatory, this does not mean that compliance is necessarily jurisdictional. *Sinclair*, 984 S.W.2d at 961; *Hines v. Hash*, 843 S.W.2d 464, 467 (Tex. 1992); *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex. 1983). When a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences. *Sinclair*, 984 S.W.2d at 961; *Schepps,* 652 S.W.2d at 937-38; *Chisholm*, 287 S.W.2d at 945.

Title 24 of the Code of Federal Regulations regulates public housing authorities. The applicable section states that a notice of lease termination "<u>shall</u> specify the judicial eviction procedure to be used." *See* 24 C.F.R. § 966.4(I)(3)(v)(B) (emphasis added). We conclude that the plain meaning, nature, and object of this phrase is to mandate that a housing authority notify a tenant of the judicial eviction procedure to be used. Part of the purpose of Title 24 is to afford adequate due process to tenants. For example, tenants are entitled to a grievance hearing before judicial eviction unless certain exceptions apply. *See*

8

24 C.F.R. § 966.51(a)(1) (2008).[3]  Even when an exception applies and a grievance hearing is not required, the regulations mandate that the judicial procedure used to evict a tenant must possess the basic elements of due process.  24 C.F.R. § 966.4(1)(3)(v)(B).  In this case, reading "shall" as directory instead of mandatory would dilute the procedural safeguards promulgated by the Department of Housing and Urban Development.

The notice in the instant case did not specify which court would hear the eviction action.  In fact, it was so deficient that it did not even attempt to parrot the text of the regulation.  *See, e.g., Edgecomb v. Hous. Auth. of Vernon*, 824 F.Supp. 312, 314 (D. Conn. 1993) (providing that a notice which merely parrots the broad language of the regulations is insufficient).  Therefore, the housing authority's first issue is overruled.

## C.    Subject-Matter Jurisdiction

By its second issue, the housing authority argues that the trial court erred in dismissing its detainer action because Lara was not harmed by any alleged insufficiency in the notice.  The housing authority argues that we should follow the First Court of Appeals, which has held that notice defects in housing authority cases are subject to a harm analysis because protections in the federal regulations exist "to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence" rather than to create jurisdiction.  *See Nealy v. Southlawn Palms Apartments*, 196 S.W.3d 386, 392 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (citing *Escalera v. N.Y. City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1970)).

---

[3] Those exceptions include:  (A) any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises of other residents or employees of the PHA; (B) any violent or drug-related criminal activity on or off such premises; or (c) any criminal activity that resulted in felony conviction of a household member.  24 C.F.R. § 966.51(a)(2)(i)(A)-(B) (2008).

Lara counters by arguing that the notice requirements vest her with a fundamental due process right that is jurisdictional. She contends that this "jurisdictional right" is not subject to a harm analysis. In essence, Lara asks us to create a different rule than the one crafted by in *Nealy*, but her only rationale is that she does not agree with the rule that is already on the books. We are persuaded by neither the housing authority's nor Lara's arguments. Instead, we look to our own cases for guidance.

In *Hinojosa*, this Court was confronted with a similar notice argument. *See Hinojosa v. Hous. Auth. of Corpus Christi*, 896 S.W.2d 833 (Tex. App.–Corpus Christi 1995, writ dism'd w.o.j.). The housing authority in *Hinojosa* issued a defective notice, which the tenant asserted in county court warranted a dismissal. *Id*. at 385. The housing authority, however, moved to abate its detainer action so that it could cure the defects. *Id*. The county court abated the proceeding, and the case was eventually reinstated and tried to a jury on the merits. *Id*. On appeal, the tenant argued that the trial court erred by not dismissing the action. *Id*. at 836. We found that the "[i]n many areas of the law, abatement is appropriate when prerequisites are missing," and we held that the trial court did not err in abating rather than dismissing the case. *Id*. at 836-37.

Implicit in the *Hinojosa* case is the notion that the notice requirements contained in the applicable federal regulations are not jurisdictional. *See id.; see also Torres v. Corpus Christi Hous. Auth.*, No. 13-04-591-CV, 2006 Tex. App. LEXIS 6872, *4-5 (Tex. App.–Corpus Christi 2006, no pet.) (mem. op.) (concluding that alleged deficiencies in a housing authority's notice to terminate lease must be raised before the trial court or the complaint is waived). The trial court in this case, therefore, erred in dismissing the housing authority's detainer action. Instead, the trial court should have abated the housing

10

authority's action so that it could provide Lara with the federally mandated notice. *See*

*Hinojosa*, 896 S.W.2d at 836. Therefore, the housing authority's second issue is sustained

in part.

### III. CONCLUSION

The trial court's dismissal order is reversed, and the case remanded back to the trial

court with instructions to abate the underlying action until sufficient notice is provided.

_____
ROGELIO VALDEZ
Chief Justice

Opinion delivered and filed
this the 17th day of July, 2008.