

NUMBER 13-09-00355-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

O.F. JONES III,                                                                                   Appellant,

v.

RICHARD WHATLEY,                                                                         Appellee.

### On appeal from the 267th District Court
### of Calhoun County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Rodriguez

This appeal involves a dispute over legal fees between attorney, appellant O. F. Jones III, and his client, appellee Richard Whatley. Following a bench trial, the court entered judgment against Jones and filed findings of fact and conclusions of law. The trial court also awarded Whatley his attorney's fees on his counterclaims and his expert attorney witness's fees. By multiple, unnumbered issues and sub-issues, which we

organize and number as three, Jones challenges the trial court's judgment and its findings of fact and conclusions of law.   We reverse and remand, in part, and reverse and render, in part.

## I.   BACKGROUND[1]

Jones provided legal representation to Whatley in a suit against Lindeman, Inc. (the *Lindeman* case), tried in the 38th Judicial District Court of Medina County, Texas. *See Whatley v. Lindeman, Inc.*, No. 04-04-00351-CV, 2005 Tex. App. LEXIS 1078, at *1, 7-16 (Tex. App.—San Antonio Feb. 9, 2005, pet. denied) (mem. op.).   Following a trial on the merits, the jury awarded Whatley $93,334 to "fairly and reasonably compensate" him for damages that resulted from the loss of his plane when the hangar in which it was being repainted burned.[2]   *Id.* at *14.   The jury also awarded $18,600 as "a reasonable fee for the necessary [legal] services" Jones "rendered in preparation [of] and [for the] trial of this case . . . ."   *Id.*   The jury awarded no appellate fees.   *See id.* at *14-15.

Considering this an adverse judgment because of the amount of damages and the amount of attorney's fees awarded, appeal was taken to the Fourth Court of Appeals challenging the sufficiency of the evidence to support both awards.[3]   *See id.* at *1, 7-16. In its opinion delivered on February 9, 2005, the San Antonio Court held, in relevant part, that the evidence was sufficient to support the jury's finding that the value of the plane

---

[1]As this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

[2]The record reflects that Jones also represented Whatley in two other lawsuits that involved the loss of this plane.

[3]Although it is disputed as to who wanted to appeal the matter, Whatley or Jones, it is undisputed that when the appeal was taken to the San Antonio Court, Jones represented Whatley and agreed not to charge him appellate fees for his representation.

was $93,334.00. *Id.* at *11-12, 14. As to the attorney's fees, the appellate court concluded that the "amount of attorney's fees awarded [$18,600] was within the range of the testimony and supported by sufficient evidence."[4] *Id.* at *16. The court of appeals also concluded that "the trial court did not abuse its discretion in finding that the amount of the settlement credit was $106,000.00."[5] Id. at *11-12. Accordingly, it overruled Whatley's issues and affirmed the trial court's judgment. *Id.* at *12-17.

On June 16, 2006, Jones sued Whatley for breach of contract or, in the alternative, for payment pursuant to the equitable doctrine of quantum meruit. In his petition, Jones claimed that Whatley defaulted in the payment of his account for legal services Jones rendered in the *Lindeman* case by refusing to pay the full balance due. Whatley answered, generally denying Jones's claims and asserting equitable estoppel, fraud, and illegality as affirmative defenses. Whatley also counterclaimed, alleging negligent misrepresentation, breach of fiduciary duty, and violations of the Deceptive Trade and Practices Act (DTPA). He sought cancellation of the transactions, a declaration that all fees were "null and void," actual and punitive damages, and attorney's fees. This case was filed as Cause Number 06-06-0038 in the 267th Judicial District Court, Calhoun County, Texas. Tried to the bench, the trial court entered a take-nothing judgment against Jones on his quantum meruit claim. The trial court also concluded that Jones

---

[4]The San Antonio Court noted that "Whatley's attorney [Jones] testified that a fair and reasonable fee would be one-third of 'whatever amount that the jury puts down as being the value of the aircraft.'" *Whatley v. Lindeman, Inc.* No. 04-04-00351-CV, 2005 Tex. App. LEXIS 1078, at *15-16 (Tex. App.—San Antonio Feb. 9, 2005, pet. denied) (mem. op.).

[5] After deducting the settlement credit of $106,000 from the total damages and attorney's fees award of $111,934.00, the net amount of the judgment that Whatley received was $5,934.00. This is supported by Whatley's testimony that the net amount, after everything was settled, was "fifty-something hundred dollars" and by his agreement that the insurance company paid that amount.

3

breached a contract, participated in instances of misrepresentation, and breached his fiduciary duty in Whatley's countersuit. Without finding damages, the trial court awarded Whatley "attorney's fees in the amount of $7,500, plus expert attorney's fees of $2,400." The trial court filed findings of fact and conclusions of law. This appeal followed.

## II. DISCUSSION

By three issues, Jones challenges the trial court's findings of fact and conclusions of law. Specifically, the relevant findings and conclusions about which he complains relate to Jones seeking relief in this litigation only on quantum meruit, the applicability of the clean hands doctrine, and Whatley's attorney's fee awards.

### A. Standard of Review

### 1. Findings of Fact

An appellate court reviews the trial court's findings of fact for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Corpus Christi Housing Auth. v. Lara*, 267 S.W.3d 222, 226 (Tex. App.—Corpus Christi 2008, no pet.). When a reporter's record is part of the appellate record, findings of fact are not conclusive on appeal, even if unchallenged. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

In our review of the factual sufficiency of the evidence, we must consider and weigh all of the evidence, and we will set aside a verdict only if the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). Before reversing on a factual-sufficiency point of error, the court of appeals must clearly state why the finding of fact is not supported by the evidence. *Id.*

4

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact finder] to reach the [result] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Legal sufficiency review must consider evidence favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Id.* The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819. We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

An appellant may challenge the sufficiency of an implied finding. *See Castano v. Wells Fargo Bank*, 82 S.W.3d 40, 42 (Tex. App.—San Antonio 2002, no pet.). We conduct our review of sufficiency challenges to implied findings under the same standards of review that govern sufficiency challenges to jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam); *see also Charles Clark Chevrolet Co. v. Garcia*, No. 13-08-00633-CV, 2010 Tex. App. LEXIS 2522, at *8-9 (Tex. App.—Corpus Christi Apr. 8, 2010, no pet.) (mem. op.).

## 2. Conclusions of Law

The trial court's conclusions of law are reviewed de novo. *BMC Software Belgium*, 83 S.W.3d at 794; *Lara*, 267 S.W.3d at 226. We independently evaluate a trial court's conclusions to determine their correctness, and we will uphold conclusions on appeal if the judgment can be sustained on any legal theory supported by the evidence. *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet. denied).

### B. Applicable Law

Quantum meruit is an equitable remedy that "'is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Vortt Exploration, Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quoting *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988)). Founded on unjust enrichment, quantum meruit "will be had when non-payment for the services rendered would 'result in an unjust enrichment to the party benefitted by the work.'" *Id.* (quoting *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.)).

A party seeking an equitable remedy, such as quantum meruit, must come to court with "clean hands." *In re Gamble*, 71 S.W.3d 313, 325 (Tex. 2002) (Baker, J., concurring); *Truly*, 744 S.W.2d at 938; *Omohundro v. Matthews*, 161 Tex. 367, 381, 341 S.W.2d 401, 410 (1960). This clean hands doctrine requires that one who seeks equity,

6

does equity; equitable relief is not warranted when the plaintiff has engaged in unconscionable, unjust, or inequitable conduct with regard to the issue in dispute. *In re Francis*, 186 S.W.3d 534, 551 (Tex. 2006); *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi 1994, no writ).

The clean hands doctrine is not, however, absolute. *Omohundro*, 341 S.W.2d at 410. It should not be applied unless the party asserting the doctrine has been harmed and the wrong complained of cannot be corrected without the application of the doctrine. City *of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.); *Thomas*, 882 S.W.2d at 880; *see also Omohundro*, 341 S.W.3d at 410 (setting out that the party complaining that his opponent is in court with "unclean hands . . . must show that he himself has been injured by such conduct" and "the wrong must have been done to the defendant himself and not to some third party"); *Afri-Carib Enters., Inc. v. Mabon Ltd.*, 287 S.W.3d 217, 222 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (explaining that the trial court cannot apply the clean hands doctrine unless "the misconduct at issue is connected to the subject of the litigation and the party asserting the defense has been seriously harmed by the misconduct").

## C.  Quantum Meruit

By his first issue, Jones challenges the trial court's finding that he "elected to proceed only on the equitable theory [of] [q]uantum [m]eruit." While conceding that he informed the trial court during his opening statement that he was seeking recovery of his legal fees based only on quantum meruit, Jones contends that the evidence shows he proceeded on breach of contract and only alternatively on quantum meruit.

7

The complained-of finding is, in effect, a finding that Jones abandoned his contract claim. This determination involves a question of law. *See In re Shaw*, 966 S.W.2d 174, 177 (Tex. App.—El Paso 1998, no pet.). Therefore, the trial court incorrectly designated it as a finding of fact. *See Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n.1 (Tex. 1979). The trial court's designation, however, is not controlling, and we will treat the finding of abandonment as a conclusion of law and review it accordingly. *See In re Unborn Child*, 153 S.W.3d 559, 561 (Tex. App.—Amarillo 2004, pet. denied) ("[E]ven where the trial court designates some matters findings of fact and others to be conclusions of law, the designation is not controlling on appeal.") (citing *Ray*, 576 S.W.2d at 608, n.1; *McAshan v. Cavitt*, 149 Tex. 147, 154, 229 S.W.2d 1016, 1020 (1950)).

In this case, Jones sued Whatley for breach of contract and on the equitable theory of quantum meruit. Now, in support of his contention that he proceeded on both theories, Jones refers us to the following trial testimony:

> Q. [Defense Counsel] But you're asking Mr. Whatley to pay for your tactical decision. That's the truth, isn't it?
>
> A. [Jones] No, Sir. No, sir. I'm asking Mr. Whatley to pay me like he agreed to pay me for the time that I spent on his behalf.
>
> . . . .
>
> Q. No, but you're trying to collect more money than a jury said you were entitled to, correct?
>
> A. No, sir. I'm trying to collect whatever is fair and right.

Jones also refers us to the following colloquy he had with the trial court: When the trial court asked whether he and Whatley ever reduced the agreement to writing, Jones responded, "No, because at all times up until the time that the judgment became final, he

8

and I both, I thought, were on the same page that it was entirely an hourly rate basis decision." Finally, Jones relies on the following statement made during his closing argument: "My entire time has been on the basis of what we originally had to go by and what a fair and reasonable fee for the time that I have spent is."

However, Jones continued his argument as follows:

I offered long ago to take—even though I told [Whatley] I had over $30,000 in actual time invested in it that I hadn't been paid for, $35,000 to be exact, that I would still stick with the jury verdict and I'd give him credit for the $5,000 that he had already paid, which was $13,600.

In addition, in his opening statement before the trial court, Jones clearly stated the following: "The basis of the complaint, as I say, is to simply recover, at this point on quantum meruit, for a reasonable fee for the services that were previously rendered as well as for attorney fees in conjunction with this suit to collect the attorney's fees." In addition, on cross-examination, Jones testified as follows:

Q.     Mr. Jones, we're here today seeking equity, correct?

A.     I would hope so.

Q.     Equity equals fairness, correct?

A.     I would hope so.

Finally, in his closing argument, Jones concluded: "So all I'm asking the Court to do is to decide what's fair and right, but I think I'm entitled to be paid."

Formal amendment of the pleadings is not required in order to show abandonment. *Sosa v. Central Power & Light Co.*, 901 S.W.2d 562, 567 (Tex. App.—San Antonio 1995), *rev'd on other grounds*, 909 S.W.2d 893 (Tex. 1995). In fact, a stipulation may form the basis for abandonment. *See id.* "A stipulation is an

9

agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Laredo Med. Group v. Jaimes*, 227 S.W.3d 170, 174 (Tex. App.—San Antonio 2007, pet. denied) (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998)).

Reviewing the trial court's legal conclusion to determine its correctness, *see Templeton*, 961 S.W.2d at 656 n.8; *Dallas County v. Sweitzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied), we conclude that the statement made by Jones during his opening statement to the trial court constitutes a stipulation of abandonment. *See Sosa*, 901 S.W.2d at 567. Furthermore, the facts from which the conclusion was drawn, even those relied upon by Jones, support the correctness of the conclusion that Jones abandoned his contract claim and proceeded only on quantum meruit. *See Moers*, 104 S.W.3d at 611. Accordingly, we overrule Jones's first issue.

## D.  Clean Hands Doctrine

By his second issue, Jones challenges the trial court's findings and conclusions regarding the clean hands doctrine. He claims that the evidence is insufficient to establish the conclusions related to the doctrine because the facts supporting those conclusions are untrue. We construe Jones's argument as a complaint that the evidence is insufficient to support the trial court's implied finding that his actions harmed Whatley.

Applying the clean hands doctrine to Jones's request for equitable relief, the trial court made the following conclusions of law:

4.      As such under the Clean Hands Doctrine, which is a foundation of any equitable claim [quantum meruit in this case], O.F. Jones exhibited unclean hands when he testified that he has the case on a contingency fee contract, when he later stated he knew that was

10

untrue and it was to be an hourly fee; and

5.    His conduct of testifying before the jury knowing he was misleading them, violated the [clean] hands doctrine as well. O.F. Jones received attorney['s] fees initially from Mr. Whatley and out of the settlement proceeds. Based upon his inequitable conduct, he is not entitled to any additional fees.

The trial court based these conclusions on the following findings of fact:

9.    O.F. Jones testified in front of a Hondo jury that he had the case on a contingency fee contract and asked the jury to award him more than $50,000.000 [sic], without Mr. Whatley's consent. During the bench trial, he admitted he was not entirely truthful in the Hondo trial as he felt it would confuse the jury; and

10.   Mr. Whatley did not agree to this fee and was surprised by O.F. Jones['s] testimony of a full contingent fees.

Furthermore, in order to justify the application of the clean hands doctrine, the trial court had to find that Jones's actions caused serious harm to Whatley. *See Thomas*, 882 S.W.2d at 880. Because our analysis of this implied finding is dispositive of the second issue, we will address it first.

To prove up attorney's fees in the *Lindeman* case, Jones provided the following testimony:

When I undertook to represent Mr. Whatley, I told Mr. Whatley that my—the terms of my representation, and it would be on a standard basis. Normally, I have an employment contract that I have clients sign. But a lot of times when it's a client that I represented in the past, sometimes that doesn't get done. I don't know, frankly, whether I had Mr. Whatley sign an employment contract or not in this case. If I did, I've misplaced it. But it's possible that I didn't actually have him sign one.

But if I had had him sign one, it would have been on the standard form that I use, which provides that we are to—my office is to be paid in this type of case a 25 percent contingent fee—if—if we're able to settle the case or conclude the case before litigation begins.

11

And in the event that we have to institute litigation and pursue litigation, then that contingent fee is increased to 40 percent. And the reason for that percentage is because a lot of times these cases, you don't know until you get into them what all is going to be involved. You don't know until you get finished with them how it's going to come out. And a lot of times you start off with something that you think is going this way, and you wind up going some other direction before you get through.

There are some of these cases of this type, frankly, that you win and some that you lose. And so the contingency sort of tends to offset the good ones from the bad ones, very candidly.

As a matter of fact, in this particular instance, I have now spent over 200 hours of my time, prior to the time that we began trial here yesterday in handling this case and its various issues and ramifications. And of course, obviously, we've had yesterday, and we'll have today, and some more time to be involved after that.

However, in this particular case, I frankly believe that at this point in time, there is a reason to reduce that—that contingency a little bit. And so what it would be—what I think it should be, what would be a fair and reasonable fee under the circumstances, and what I think is necessary to represent Mr. Whatley adequately is—is one[-]third of the amount of the recovery.

Now, what that basically means is—is this: Mr. Whatley says that he thinks his airplane was worth $157,500. Mr. Welch has said that he thinks it's worth $123,000. Now he didn't include the paint job when he did that first appraisal over there.

. . . .

It will be up to the jury to decide which of those amounts to answer the value of the aircraft. Whatever amount that the jury puts down as being the value of the aircraft, then for reasonable and necessary attorney fees through the trial of this case, would be one[-]third of that amount, whatever that turns out to be.

Now, in addition to that, there's another little wrinkle in this case, and that is that the defendant has the right to appeal this Court's decision to an appellate court. If they do, then they would appeal to the Court of Appeals . . . . And the lawyers would then have to do some additional work in that appellate court.

12

I have been in appellate courts throughout the time that I've been practicing law on many occasion. Some of them my choice, and some of them not my choice. And so I am familiar with the time that is required and the work that is required to spend on an appeal in a case where you have a lot of contested issues.

And in this particular case, it's my opinion that a reasonable fee to be incurred by Mr. Whatley in the appellate court and the Court of Appeals would be [$]15,000.

Now once the Court of Appeals has decided the case, then the losing party there has the right to file what's called a Petition for Writ of Error or Petition for Review with the Supreme Court in Austin. If either side does that, they'll be about $3500 of work incurred in either preparing or answering that petition.

If the Supreme Court sees fit to grant that petition and have oral argument before that court, there will be another $3500 of time and expense incurred by—by both sides, for that matter.

So my—my testimony to you is that one-third of the amount of your answer to the value of the aircraft plus appellate attorney fees of $15,000, [$]3500 and [$]3500 on the question that you will be asked. In my judgment, all of those will be necessary to represent Mr. Whatley adequately, and they're all fair and reasonable based on my experience in trying lawsuits for 47 years.

After determining that $93,334 would "fairly and reasonably compensate" Whatley for his damages, the *Lindeman* jury found that a reasonable fee for the necessary services of Whatley's attorney rendered in preparation and trial of the *Lindeman* case was $18,600. *See Lindeman*, 2005 Tex. App. LEXIS 1078, at *15. The jury awarded "0" for any appeals taken. *See id.* at *16-17.

In the present case, Jones provided the following testimony explaining his rationale for presenting attorney's fees to the *Lindeman* jury as he did:

Now, the point that I was trying to make with the jury at that point in time was this. I was concerned about that jury and I was concerned that since Mr. Lindeman was a local person and the City of Hondo obviously was

13

a tax-payer-funded local organization, I didn't want the jury to have any more reason than possible to quibble with our evidence and our position. It was to Mr. Whatley's advantage, obviously, for the jury to return as high a number on the value of his aircraft as we could get, but it also was important to both of us for the jury to return a large number on the attorney fees because there never was a contingent fee agreement. Mr. Whatley's counsel, I think, came up with the idea that there was, but Mr. Whatley said there wasn't and I've said there wasn't. There never was a contingent fee agreement.

I did use the term "contingent" in referring to this, but there are two different types of contingent fees, Your Honor. One is a contingent fee where you collect the money for your fee out of the money that the client gets, such as in a car wreck case. The other type of contingent fee is where it's contingent upon the amount that it's to be. In this case it was contingent upon the answer of the jury to Question Number 1 and if the jury answered—well, whatever the jury answered Question Number 1, then should have been the basis for the answer to Question Number 2. That didn't work out that way, but that's what we were trying to do.

And I was concerned that if I started talking about handling the case on an hourly basis and I was telling the jury that I had 200 and some odd hours of time invested in depositions and that there had been a number of other parties to the lawsuit and a number of other lawyers involved, that the jury would go off chasing rabbits and try to figure out who had paid what and how much had they paid and who was actually responsible and could they get out of finding Mr. Lindeman guilty. And so my concern was that I wanted the jury to be—I wanted it to be as simple as they could.

And my premise to Mr. Whatley the night before was let's do it simple, let's keep it simple and let's not get involved in all of the details of where the time went or what it was for, let's just tell them that we want a third of the amount of whatever they answer Number 1. And that's what this testimony was designed to do.

On cross-examination, when asked whether the contract was an hourly-fee contract or a percentage-fee contract, Jones answered, "As far as I was concerned it was an hourly fee [contract] the entire way through. . . . What I told the jury was that we were asking the jury to find a percentage fee that Mr. Whatley and I would use to cover that hourly determination, whatever that was." And now, on appeal, Jones agrees that the trial

14

court's finding that "[t]he jury in Hondo found the entire value of O.F. Jones legal service to be $18,600," is a correct finding.

Having reviewed the record, we find no evidence that establishes Whatley was harmed by Jones's actions, and Whatley points us to none. Had the jury calculated attorney's fees in the *Lindeman* case based on Jones's argument that fees should be one-third of the amount of the aircraft's value plus appellate fees, it would have awarded $31,000—one-third of the $93,000 damages found. The jury clearly did not calculate fees using the percentage suggested by Jones. *See Prati v. New Prime, Inc.*, 949 S.W.2d 552, 555 (Tex. App.—Amarillo 1997, pet. denied) (op. on reh'g) (pointing out that because the mental processes by which a jury determines the amount of damages is ordinarily not cognizable by an appellate court and where the law does not provide a precise legal measure of damages, the amount is generally within the discretion of the jury). Rather, it awarded attorney's fees in the amount of $18,600, an amount that the San Antonio Court of Appeals concluded, on appeal, "was within the range of the testimony and supported by sufficient evidence." *See Lindeman*, 2005 Tex. App. LEXIS 1078, at *16. Therefore, we cannot conclude Whatley was harmed on this basis.

Moreover, Jones testified that he and Whatley would use the jury's determination of attorney's fees in the *Lindeman* case to cover the hourly determination and agreed that the trial court's finding—"[t]he jury in Hondo found the entire value of O.F. Jones legal service to be $18,600"—is a correct finding. Based on these concessions, we cannot conclude Whatley was harmed by Jones's actions. Rather, Whatley benefited from Jones's actions because Jones testified that his hourly fees totaled $35,000 and Whatley

15

acknowledged, on appeal, that Jones "had hourly time of $32,000 or so, at the time of trial."

Therefore, assuming without deciding that Jones came into court with unclean hands, we conclude, after considering and weighing all of the evidence that the implied finding of harm, on which Whatley had the burden, is factually insufficient because it is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772. Furthermore, considering the evidence in the light most favorable to the verdict, *see AutoZone*, 272 S.W.3d at 592, the trial court could not have disregarded evidence contrary to the implied harm finding, i.e., that Whatley was not harmed because the jury awarded only $18,600 in attorney's fees which is approximately $15,000 less than (1) the amount of fees that would have been awarded had the jury used the recommended one-third percentage calculation, and (2) the acknowledged amount of Jones's "hourly time." *See City of Keller,* 168 S.W.3d at 827. Having considered this evidence, the trial court could not have determined that Whatley was harmed, such that the clean hands doctrine should have been applied. *See id.* Because the evidence establishes conclusively the opposite of the implied finding of harm, it is also legally insufficient. *See King Ranch*, 118 S.W.3d at 751.

Based on the above analysis, we conclude that because the facts do not support a finding of harm, the trial court's conclusions regarding the application of the clean hands doctrine were not justified. *See Templeton*, 961 S.W.2d at 656 n.8; *Thomas*, 882 S.W.2d at 880 (citing *Omohundro*, 341 S.W.2d at 410). We sustain Jones's second issue.

16

## E.  Award of Attorney's Fees on Whatley's Counterclaims

By his third issue, Jones challenges the trial court's award of attorney's fees to Whatley.   He asserts that there is no evidence to support this award.

The trial court concluded that Jones's actions constituted "a material breach of contract as [pleaded] in the counter[]suit."   Without finding damages, the trial court further concluded that "[t]his breach of contract gives rise to the award of attorney['s] fees to Mr. Whatley."   The court also concluded, again without finding damages, that "the several incidences of inequitable conduct of . . . Jones . . . constituted misrepresentation and breach of fiduciary duty, which were properly plead[ed] in the countersuit[,] and each of which also support[s] the award of attorney['s] fees to Mr. Whatley."[6]

An award of attorney's fees in a breach of contract claim is appropriate only if a party prevails and recovers damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008) (allowing recovery of attorney's fees in valid claims involving oral or written contracts); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995). Assuming without deciding that Whatley prevailed on his breach of contract claim, that claim nonetheless provides no legal basis for his recovery of attorney's fees because Whatley recovered no damages on that basis.

In addition, the trial court awarded no damages on Whatley's misrepresentation and breach of fiduciary duty claims.   *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (identifying elements of negligent misrepresentation as follows:   (1) a defendant provided information in the course of his business, or in a transaction in

---

[6] The trial court did not award attorney's fees based on Whatley's deceptive trade practices claim, if any.

17

which he had a pecuniary interest; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) *the plaintiff suffered damages* proximately caused by the reliance); *Beck v. Law Offices of Edwin J. Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.) (setting out the elements of a breach-of-fiduciary-duty claim as (1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant; (3) that causes; and (4) *damages to the plaintiff*). Therefore, we must reject an award of attorney's fees on the basis of these claims also.[7]

---

[7] We note that "if a client seeks the remedy of equitable fee forfeiture and proves a breach of fiduciary duty by the attorney[, unlike attorney's fees,] the client may obtain that [fee-forfeiture] remedy without the need to prove causation or damages if the court [concludes that] the attorney's conduct was a 'clear and serious breach of duty to his client,' and, most importantly, that forfeiture of the fee (or some portion of it) was 'necessary to satisfy the public's interest in protecting the attorney-client relationship.'" *Beck v. Law Offices of Edwin J. Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex. 1998)). Factors that form the basis of the court's decision regarding a fee forfeiture request include, "without limitation, whether or when the misconduct complained of occurred, the attorney's mental state at the time, and the existence or extent of any harm to the client." *Burrow*, 997 S.W.2d at 246.

In this case, Whatley pleaded for forfeiture of Jones's attorney's fees. And the court, in effect, ordered partial forfeiture. The trial court found that the alleged misconduct occurred, but made no finding of Jones's mental state at the time or of the existence or extent of any harm to Whatley. *See id.* The trial court did conclude the following:

> O.F. Jones received attorney fees initially from Mr. Whately and out of the settlement proceeds. Based upon [Jones's] inequitable conduct [when he testified that he had the case on a contingency fee contract and later stated he knew that was untrue and it was to be an hourly fee and when he testified before the jury knowing he was misleading them], he is not entitled to any additional fees.

Independently evaluating this conclusion of law de novo to determine its correctness, *see BMC Software Belgium*, 83 S.W.3d at 794 (Tex. 2002); *Corpus Christi Housing Auth. v. Lara*, 267 S.W.3d 222, 226 (Tex. App.—Corpus Christi 2008, no pet.); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.), even were we to conclude that the facts support a conclusion that there was a "clear and serious breach of duty" to Whatley, we cannot conclude that Jones is not entitled to any additional fees—that he must forfeit additional fees. There are simply no facts in the record supporting a conclusion that partial fee forfeiture was necessary to satisfy the public's interest in protecting the attorney-client relationship. *See Burrow*, 997 S.W.2d at 246; *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet. denied).

18

Assuming without deciding that Whatley's counterclaims were properly pleaded and tried to the court, we conclude that Whatley is not entitled to attorney's fees on his counterclaims. We sustain Jones's third issue as to the trial court's award of Whatley's attorney's fees.

By this issue, Jones also complains of the trial court's $2400 award for Whatley's expert attorney's fees. Because Whatley concedes that he is not entitled to this award, we also sustain Jones's third issue in this regard.[8]

### III. CONCLUSION

Accordingly, we reverse the trial court's take nothing judgment against Jones in his suit for attorney's fees and remand for proceedings consistent with this opinion to determine the amount of Jones's attorney's fees based on quantum meruit only, without applying the cleans hands doctrine. Furthermore, we reverse the judgment of the trial court awarding Whatley his attorney's fees on his counterclaims and his expert attorney witness's fees and render judgment that Whatley take nothing on his claims for attorney's fees.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
9th day of June, 2011.

---

[8] We decline to address Jones's remaining arguments as they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

19