OPINION OF THE COURT
Scott Fairgrieve, J.
Petitioner has commenced this holdover proceeding against respondent John Pitts concerning the premises located at Apt. 309, 110 Jerusalem Avenue, Hempstead, New York, to evict respondent for criminal activity. The lease covers the period from May 1, 2012 to April 30, 2013. Paragraph 7 of the petition, dated February 4, 2013, states that the lease was made “pursuant to a Housing Assistant Agreement under Section 8 of the United States Housing Act of 1937 (42 United States Code 1437 (f)).”
Paragraph 2 of the petition states that respondent was served with a notice of termination of lease dated January 9, 2013, which terminated the lease as of January 31, 2013.
The notice of termination states that the lease was being terminated due to material noncompliance by respondent with the terms of the lease by criminal activity. The criminal activity alleged to have been committed by respondent include:
“Your repeated violations of the lease both substantial and/or minor, have included incidents where you have engaged in criminal conduct and/or noncriminal conduct which has disrupted the livability of the project, has adversely affected the health and/or safety of other occupants and violated the rights of other tenants to quiet enjoyment of the premises, and related project facilities, and has interfered with the ability to manage the project.
“On Saturday, December 29, 2012, at approximately 4:15 EM., you were observed in the lobby, crumbling the ‘sign in sheet’ on the table in the lobby of the 110 building.
“On Monday, December 31, 2012, at approximately 4:04 EM., you were observed leaving the premises *716 and removed the ‘sign in sheet’ at the front entrance, crumbled it and threw it on the floor;
“On Tuesday, January 1, 2013 at approximately 1:55 A.M., you were observed removing the ‘sign in sheet’ and placing it in your pocket in the 110 building.
“On Tuesday, January 1, 2013 you threatened Michael Bloomfield, a security office by yelling at him ‘you fat ass I’ve got your number’ from the window of the building.
“On Wednesday, January 2, 2013, at approximately 9:30 A.M., you threatened the Building Manager, Paulette Wilks, by yelling at her ‘You black bitch . . . I’m going to get you.’ ‘I’m going to fuck you up you black bitch’ from your apartment window.
“On Wednesday, January 2, 2013, at approximately 4:34 EM., you were observed looking through other tenants’ vehicles in the parking lot, when asked to stop, you threatened the security guard, ‘Jonathan,’ began to verbally assault the security guard, by yelling: T can walk any fucking where’ ‘security ain’t shit you are all pussies.’ You continued to yell and threaten the security guard after he asked you to stop speaking to him in that way, and you continued yelling, ‘White man, shut the fuck up before I fuck you up.’ and you continued to yell profanities, ‘you’re a pussy,’ ‘you’re a faggot,’ and T will fuck you up,’ up to the point the police were called and arrived at the premises.”
The notice of termination advises the respondent that he has 10 days to discuss the termination of the lease with the landlord:
“You are hereby advised that you have ten (10) days within which to discuss the termination of your tenancy with the Landlord. The ten (10) day period will begin on the date this notice is delivered to you, if delivered to you by hand, or the day after the notice is mailed to you, whichever is earlier.”
Attached to the notice of termination is the order of protection, dated January 10, 2013 which directs respondent to stay away from Paulette Wilks.
Respondent has moved to dismiss the petition for lack of subject matter jurisdiction because the petitioner failed to give one month’s notice of termination of the tenancy pursuant to Real Property Law § 232-b or 30-day notice of termination as required by the lease. Respondent contends that the notice given *717 on January 9, 2013 terminating the lease on January 31, 2013 is inappropriate. The issue presented is what is the applicable notice required to be given to a Section 8 tenant where termination is based upon material noncompliance. 24 CFR 247.4 (c) is the applicable regulation, which provides as follows:
“Time of service. When the termination of the tenancy is based on other good cause pursuant to § 247.3(a)(4), the termination notice shall be effective, and the termination notice shall so state, at the end of a term and in accordance with the termination provisions of the rental agreement, but in no case earlier than 30 days after receipt of the tenant of the notice. Where the termination notice is based on material noncompliance with the rental agreement or material failure to carry out obligations under a state landlord and tenant act pursuant to § 247.3(a)(1) or (2), the time of service shall be in accord with the rental agreement and state law.”
The foregoing United States Department of Housing and Urban Development (HUD) regulation has the “full force and effect of federal law.” (See Westbeth Corp. HDFC Inc. v Ramscale Prods., Inc., 37 Misc 3d 13, 15 [App Term, 1st Dept 2012].)
If termination of the lease was based upon other good cause pursuant to 247.3 (a) (4), then this proceeding would be dismissed for failure to serve a 30-day notice of termination as required by 24 CFR 247.4 (c).
However, since termination is based upon material noncompliance, the amount of time of service necessary for service of the notice of termination is determined by reference to the rental agreement and state law.
A review of the rental agreement between petitioner and respondent reveals no time requirement for service of the notice of termination based upon material noncompliance. A review of New York State law also fails to provide the necessary time requirement for service of a termination notice based upon material noncompliance.
Counsel for petitioner and respondent and this court have done extensive research on this issue but no case has been found which specifically decided this issue.
Paragraph 23 (b) of the lease states as follows: “Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement.”
*718 Paragraph 23 (c) (6) of the lease provides for termination for criminal activity “by a tenant, any member of the tenant’s household, a guest or another person under the tenant’s control:
“(a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises);
“(b) or that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises.”
Paragraph 23 (e) provides that the landlord must give the tenant 10-day notice to discuss the proposed termination of tenancy with the landlord and
“advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord. The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed. If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant; and advise the Tenant of his/her right to defend the action in court.”
The said notice of termination at bar provided the tenant with the required 10-day notice to discuss the termination with the landlord.
In Fairview Co. v Idown (148 Misc 2d 17, 23-24 [Civ Ct, Richmond County 1990]), the court raised the specific issue facing this court but without resolution:
“Although not raised as an issue by the respondent tenant, the termination notice suffers from another possible infirmity. The notice, served on April 5, 1990, purports to terminate the tenancy on April 19, 1990. It is unclear whether the notice provides the required minimum notice period. 24 CFR 247.4 (c) provides that the notice period in [the] case of a termination based upon material noncompliance with the lease ‘shall be in accord with the rental agreement and state law’. The rental agreement is silent as to the notice period. Consequently, reference must be made to State law. However, neither the pleadings nor the moving papers provide the court with sufficient information to determine *719 which State law applies, i.e., New York City Rent Control, New York City Rent Stabilization, or the Emergency Tenant Protection Act of 1974 (ETPA) codified respectively in Administrative Code of the City of New York § 26-401 et seq., and § 26-501 et seq., and McKinney’s Unconsolidated Laws § 8621 et seq. Although a 10-day notice period would satisfy the minimum required by both local and Federal requirements for an apartment subject to either rent control or the Rent Stabilization Law of 1969, it would not satisfy the requirement for an apartment subject to the ETPA. The tenant protection regulations implementing the ETPA require both a notice to cure and a notice of termination whose notice periods may run concurrently. For the grounds specified in the instant notice, except for the nonpayment of rent, the minimum notice period is one month. (Emergency Tenant Protection Regulations [9 NYCRR] § 2504.3 [d] [2]).”
Both counsel in the case at bar conclude that the subject apartment is not subject to the ETPA.
In New Greenwich Gardens Assoc., LLC v Saunders (23 Misc 3d 521 [Nassau Dist Ct 2009]), the landlord sought to terminate the tenancy because the respondent was in material noncompliance with her lease by allowing several individuals to reside in the subject apartment without the consent of the landlord, who were not listed on the certification and re-certification of tenant’s eligibility. The landlord served a 30-day notice of termination upon the respondent. However, the respondent contended that the 30-day notice was defective because it did not terminate the lease at the end of the monthly term in compliance with Real Property Law § 232-b. This court rejected this argument because there was no requirement in the lease nor Real Property Law § 232-b dictating the time of service where termination is for material noncompliance.
In the case at bar, a 30-day notice to terminate was not served, but petitioner served a notice which gave the respondent approximately 22 days’ notice. Is the 22-day notice of termination sufficient?
A prior written notice of termination is an essential element of a summary proceeding involving federally subsidized housing and due process provides a tenant must receive adequate notice so he/she can defend his/her property interest. (See Jackson Terrace Assnc v Paterson, 155 Misc 2d 556 [Nassau Dist Ct *720 1992]; Escalera v New York City Hous. Auth., 425 F2d 853 [2d Cir 1970]; Timber Ridge v Caldwell, 195 NC App 452, 672 SE2d 735 [NC App 2009].)
This court rules that the 22-day notice given to respondent satisfies the due process requirements in order to protect his rights. Respondent was given the required 10-day notice to speak with the landlord about termination. It is obvious to this court that the HUD regulations do not mandate a 30-day notice requirement because the HUD regulations allow the landlord to evict the tenant on a more expedited basis when material noncompliance is involved.
Based upon the foregoing, the motion to dismiss is denied.